UNITED STATES of America,
Plaintiff–Appellee,

v.

Oscar Javier GARCIA,
Defendant–Appellant.

No. 87–1700.

United States Court of Appeals,
Fifth Circuit.

July 1, 1988.

Rehearing and Rehearing En Banc
Denied Aug. 24, 1988.

Charles Louis Roberts, El Paso, Tex., for defendant-appellant.

LeRoy Morgan Jahn, Asst. U.S. Atty., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before BROWN, KING and HIGGINBOTHAM, Circuit Judges.

KING, Circuit Judge:

Oscar Javier Garcia, having entered a conditional guilty plea to a violation of federal narcotics law, appeals from the district court's denial of his motion to suppress evidence. Finding no merit in his contentions on appeal, we affirm.

I.

On April 23, 1987, at approximately 5:45 in the morning, United States Border Patrol agent Francisco Lopez ("Lopez") observed Oscar Javier Garcia ("Garcia") enter the El Paso International Airport carrying a large, hardcover grey suitcase.[1] Garcia proceeded to the Southwest Airlines ticket counter and checked his luggage. At that point, the only Southwest Airlines flight scheduled for that time of day, the "businessman's flight," was due to depart in fifteen minutes. Lopez noticed that Garcia was very nervous, kept glancing around the terminal "as if he was intent on noticing if he was being observed," and, while dressed like a businessman, did not carry a briefcase or other carry-on luggage associated with business travellers. In addition, Lopez noted that luggage similar to Garcia's had been used by drug couriers be-

---

1. In reviewing a district court's ruling on a motion to suppress based on testimony at a suppression hearing, we must accept the district court's factual findings unless they are clearly erroneous or are influenced by an incorrect view of the law. *United States v. Maldonado*, 735 F.2d 809, 814 (5th Cir.1984). Further, we must view the evidence in the light most favorable to the party that prevailed below. *Id.* Therefore, this opinion will reflect, in large measure, the factual findings of the district court below. Those findings are supported by the testimony at the suppression hearing and are, for the most part, undisputed.

fore. Garcia also avoided eye contact with Lopez as he proceeded to the boarding area (Lopez was not in uniform at the time).

While Lopez was watching Garcia, Border Patrol agent Bradley J. Williams ("Williams") went to the baggage holding area to examine Garcia's suitcase. After pounding on the suitcase and squeezing its sides,[2] Williams smelled marijuana. When Lopez examined the bag, he also smelled marijuana. Williams and Lopez secured the suitcase by taking it to their office at the airport. Lopez then went to the boarding gate to intercept Garcia. Lopez approached Garcia, identified himself as an immigration officer, inquired as to Garcia's citizenship and asked Garcia if he had checked any luggage. After Garcia replied that he had not, Lopez asked him if he was sure about that. Garcia replied that he was sure he did not check luggage. At this point, Garcia was visibly nervous—he looked to be trembling or shaking.

Lopez next asked for Garcia's ticket stub. Garcia, after searching through his pockets, replied that he could not find it. As Garcia was only three or four people away from boarding the plane, Lopez checked the floor to see if the ticket had been dropped. Lopez then asked Garcia to check again and, after further searching, Garcia finally produced a ticket stub from his coat pocket. The ticket stub did *not* contain a luggage claim stub. There was a rip in the ticket with a staple still dangling, however, which indicated to Lopez that a claim ticket stub had been ripped from the ticket. Lopez asked Garcia to accompany him to the Border Patrol office for further questioning. En route, Lopez noticed Garcia's hand in his pocket. When Garcia removed his hand from his pocket, he had a clenched fist from which a red object was sticking out a little bit. Lopez asked Garcia what he was holding. When Garcia "went through the motions of trying to hide it," Lopez grabbed Garcia's fist,

opened it and removed the ticket claim stub corresponding to the checked baggage.

Upon arriving at the Border Patrol office, Garcia was given his *Miranda* rights from a form which he read and signed. He also indicated orally that he had read his rights and that he understood them. Garcia was asked some standard questions regarding birth, address and employment. When asked his true and correct name, Garcia responded that he thought he had the right to remain silent. When asked if he had checked any luggage, he stated that he would rather not answer. He also did not wish to answer whether he had the keys for the luggage. He also stated that he did not know either the owner of the luggage or the character of the contents. When asked to consent to the opening of the suitcase, Garcia refused and stated "[s]ince its not mine, no." The suitcase was then opened, revealing 17 pounds of marijuana in a plastic bag sealed with duct tape.

On May 19, 1987, a federal grand jury returned a single count indictment which charged that Garcia "unlawfully, knowingly, and intentionally did possess with intent to distribute a quantity of marijuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1)." Garcia filed motions to suppress his oral and written statements and to suppress the fruits of the "illegal search and seizure" at the airport. The district court denied the motions. Following the district court's denial of his motions, Garcia entered a conditional plea of guilty and, later, timely appealed the district court's ruling.

Garcia raises several issues on appeal. First, he contends that the agents' compression and sniff of his suitcases in the airport baggage area constituted an illegal "seizure" or "search." Second, Garcia argues that the agents' opening of his lug-

---

**2.** At the suppression hearing, Lopez gave the following description of the method employed in squeezing suitcases:

   ... to get the best results, you lay the suitcase on the floor and pound it a couple of times, give it some hard pounds. That's to get the

air circulating in the suitcase. You bring it upright and then you squeeze the sides, and at the same time you put your nose along the seams or anywhere where there's—like the keyholes or anywhere where there's holes that protrude all the way inside.

gage without a warrant was improper. And finally, Garcia contends that the district court erred in holding that he abandoned the suitcase. Garcia argues that his denial of ownership was provoked by the agents' continued questioning regarding ownership after he had asserted his right to remain silent.

## II.

 Garcia's first contention on appeal is that the agents' squeeze and sniff of his suitcase constituted an illegal "seizure" and "search." We have recently held, however, that a Border Patrol agent's removal of a suspect's bag from an airport baggage area conveyor belt, his squeeze of the bag to procure a scent, and his subsequent sniff of that bag constituted neither a seizure nor a search. *United States v. Lovell*, 849 F.2d 910, 912–13 (5th Cir.1988). While the agents' compression of Garcia's suitcase was more forceful than the prepping permitted in *Lovell*, it was not so egregious as to merit a different result. The agents' handling of Garcia's bag was certainly no rougher than could be expected in an airport baggage handling context. *Lovell* disposes of Garcia's argument.

 Next, Garcia maintains that the agents, even if they had probable cause to believe that Garcia's suitcase contained narcotics, should have obtained a warrant before opening the suitcase. The district court concluded that Garcia, having abandoned his suitcase, lacked standing to challenge the search of the suitcase. *See United States v. Canady*, 615 F.2d 694, 697 (5th Cir.), *cert. denied*, 449 U.S. 862, 101 S.Ct. 165, 66 L.Ed.2d 78 (1980) (defendant who abandons or disclaims ownership of a suitcase can entertain no legitimate expectation of privacy in that suitcase or its contents and, therefore, cannot challenge a search of that suitcase); *United States v. Anderson*, 500 F.2d 1311, 1318 (5th Cir. 1974); *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir.1973) (en banc) ("it is settled law that one has no standing to complain of a search or seizure of property that he has voluntarily abandoned").

When first approached by the agents, Garcia twice denied having checked any luggage. When asked for his ticket, Garcia eventually produced a ticket stub with no baggage claim check. The ticket stub, however, had a rip from which a staple still dangled, indicating that a baggage claim check had been removed. Later, Garcia attempted to hide the removed claim check from the agents. Under the circumstances, we can find no clear error in the district court's finding that Garcia abandoned the suitcase.

Moreover, we find no merit in Garcia's argument that his abandonment of the suitcase was the product of improper police conduct. *See United States v. Beck*, 602 F.2d 726, 728 (5th Cir.1979). We have held that the agents' actions leading up to their detection of the smell of marijuana were not unlawful. The odor of marijuana, along with the other facts present, provided probable cause to arrest Garcia and to detain the suitcase for further examination. Garcia's abandonment of the suitcase, therefore, was not tainted by any fourth amendment violations on the part of the agents. In addition, Garcia's argument that his denial of ownership was provoked by the agents' protracted questioning regarding ownership after Garcia had asserted his right to remain silent is chronologically incorrect. Garcia immediately denied having checked any luggage when first approached by the agents. Given his subsequent words and actions, we must conclude that Garcia abandoned his luggage well before he asserted his right to remain silent. As a result, Garcia cannot now challenge the agents' opening of his suitcase. Therefore, we find no error in the district court's denial of Garcia's motion to suppress.

## III.

For the foregoing reasons, we AFFIRM.