**Arthur Joe McGOWAN, Jr. Appellant,**

v.

**The STATE of Texas Appellee.**

**No. 6–89–088–CR.**

Court of Appeals of Texas, Texarkana.

May 16, 1990.

Bob Tarrant, Houston, Tex., for appellant.

John B. Holmes, Dist. Atty., Houston, for appellee.

GRANT, Justice.

Arthur Joe McGowan, Jr. appeals a conviction of possession of cocaine with intent to deliver an amount weighing more than twenty-eight grams and less than two hundred grams by aggregate weight, including adulterants and dilutants. McGowan was tried before the court without a jury on his plea of not guilty. Two prior convictions were alleged for enhancement purposes. McGowan was found guilty, and the trial court assessed his punishment at thirty-five years in the Texas Department of Corrections.

On appeal, McGowan contends that the trial court erred in overruling his motion to suppress evidence obtained by an illegal search and seizure, in finding him guilty when the evidence was insufficient to sustain a finding that he knowingly possessed cocaine found in a camera bag, and in overruling his motion to dismiss the enhancement provisions because he is not subject to enhancement under Article 4476–15, Section 4.012 of the Controlled Substances Act[1] for the first alleged prior conviction.

Three Houston police officers, Ismael Flores, Jr., Richard Rios, and J.H. Higgins, were working on an unrelated narcotics investigation at a Stop–N–Go convenience store. Flores and Rios were together in an unmarked vehicle in front of the convenience store. Higgins was in a separate vehicle in the same parking lot area. They observed two Hispanic men arrive in an automobile in front of the pay telephones outside the store. The two Hispanic men got out of their car and looked carefully around the parking lot. They then went to a telephone, and after one of the men used it for a short time, he hung up. The officers testified that it did not appear that he spoke to anyone on the telephone. A short time later, the telephone rang, one of the men answered it, and this time there appeared to be a conversation over the telephone. A short time later, McGowan drove up and parked in front of the telephones. McGowan and the two men walked into the convenience store and purchased a six-pack of beer. McGowan then got back into his car, and the two men walked up to the driver's side of the car. One of the men handed McGowan some money, and McGowan handed him a small manila envelope. The two men then got back into their car and drove away, and McGowan also drove away. Flores and Rios followed McGowan, and Flores radioed the police dispatcher to have a patrol unit stop McGowan so that he could be identified. Officer Mike Ramos eventually stopped McGowan, and he approached the driver's side of McGowan's car while Flores approached on the passenger's side. Flores saw McGowan put his hand between the seats and pull out what appeared to be the handle of a pistol. Flores instructed Ramos to take McGowan out of the car, and as McGowan got out, the opening of the door caused the dome light inside the car to come on. At that time, Flores saw on the floorboard a small glass vial containing a

1. Tex.Rev.Civ.Stat.Ann. art. 4476–15 (Vernon 1976 & Supp.1989) (the Texas Controlled Substances Act) has been codified and is now Tex. Health & Safety Code Ann. § 481.001 et seq. (Vernon 1990). Section 4.012 of Article 4476–15 is now Tex. Health & Safety Code Ann. § 481.107.

white powdery substance, a spoon and a small plastic tray. The officers arrested McGowan and took custody of a pistol, narcotic paraphernalia, and cocaine found in the car. The officers later made an inventory search of the vehicle and found a pager-beeper and a camera bag containing various papers and pill boxes, each pill box containing a white or beige-colored rocklike substance. They also found a number of manila envelopes. Rios and another officer made a field test and weighed the narcotics. A later laboratory test confirmed that the substance was in fact cocaine and that the total weight was 34.1 grams with an average purity of eighty-nine percent. The glass vial found on the floorboard of the car contained one gram of cocaine.

McGowan contends that the police did not have probable cause to search his car and that the items were seized in violation of his constitutional rights against unreasonable search and seizure guaranteed by the Fourth Amendment of the Constitution of the United States and Article 1, Section 9, of the Texas Constitution.

McGowan points out that the officers did not hear what was said during the telephone conversation, did not hear any of the conversation between McGowan and the two men, were not looking for the two Hispanic men and did not know who they were, did not know who was called on the telephone, and did not know what was in the manila envelope. McGowan urges that the car was stopped on the basis of the officers' inarticulate hunch and that this did not constitute probable cause.

■ An investigating officer's hunch, suspicion, or good faith perception is not sufficient alone to constitute probable cause for warrantless search. Moreover, perceived events must be out of the ordinary, suspicious, and tie the suspect with a criminal act, and the suspect's conduct cannot be as consistent with innocent activity as with a criminal act. *Lunde v. State*, 736 S.W.2d 665 (Tex.Crim.App.1987).

■ The State contends that the officers had a right to view the situation in light of common practices in the illegal narcotics trade. The officers testified that it was a common practice to use the process of having someone paged from a convenience store telephone in order to purchase narcotics, that numerous narcotics transactions were known to have taken place at this particular store, that numerous narcotics transactions had taken place in this general area, that the two Hispanic men seemed to be looking around to check the area for police officers, that the two men seemed nervous, that their use of the pay telephone and McGowan's arrival shortly thereafter was indicative of the use of a pager system, and that the exchange of money for a small manila envelope, being the type of envelope often used in narcotics transactions, suggested that a narcotics transaction was taking place. Law enforcement officers are permitted to draw logical inferences and make intelligent deductions from the totality of the circumstances. *Jackson v. State*, 745 S.W.2d 4, 10 (Tex.Crim.App. 1988).

■ Probable cause exists where the facts and circumstances within the officers' knowledge and about which they had reasonable trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense had been or is being committed. *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925); *Jackson v. State*, 745 S.W.2d 4.

■ The State argues that it was not necessary for the officers' reasonable suspicion to rise to the level of probable cause for them to make a temporary investigation. To justify a brief investigative detention, the officers must have specific articulable facts that, in light of their experience and personal knowledge, would warrant intrusion upon the person stopped. *Stone v. State*, 703 S.W.2d 652 (Tex.Crim.App.1986); *Meeks v. State*, 653 S.W.2d 6 (Tex.Crim. App.1983). A police officer may stop a suspicious individual to determine his identity or to maintain the status quo while obtaining more information. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Gearing v. State*, 685 S.W.2d 326 (Tex.Crim.App.1985).

■ The police officers in the present case said the stopping of McGowan was temporary in nature and was for the purpose of seeking his identity. McGowan counters that the officers had established from the license on the car that it was leased and that they could have determined to whom it had been leased and the address of the lessee. McGowan has not shown that the initial stop was intended to be more than a brief detention for identification purposes. The circumstances were such that a brief investigative detention was authorized. Once the officer saw McGowan pull what appeared to be a pistol from between the seats and saw the small glass vial containing a white powdery substance along with the spoon and the small plastic tray, probable cause did exist for a further search. The first point of error is overruled.

■ McGowan further contends that the evidence was insufficient to sustain the trial court's finding that he knowingly possessed the cocaine found in the camera bag. McGowan's fingerprints were not found on the closed camera bag. He was not seen exercising any control over the bag, and the car was leased. Therefore, McGowan contends there was no evidence that would indicate that he knew what was in the bag.

The State contends that there were at least six legally recognized affirmative links between McGowan and the contents of the bag: (1) the place where the contraband was found was enclosed, citing *Guiton v. State*, 742 S.W.2d 5, 8 (Tex.Crim.App.1987); (2) the contraband was in close proximity and conveniently accessible to the accused, citing *Pollan v. State*, 612 S.W.2d 594, 596 (Tex.Crim.App. [Panel Op.] 1981); (3) the accused was in possession of narcotic paraphernalia, citing *Brazier v. State*, 748 S.W.2d 505, 508 (Tex.App.–Houston [1st Dist.] 1988, pet. ref'd); (4) the accused was familiar with this particular type of contraband, citing *Brazier v. State*,

748 S.W.2d at 508; (5) the accused was the driver of the automobile in which the contraband was found, citing *Guiton v. State*, 742 S.W.2d 5; *Aldridge v. State*, 482 S.W.2d 171 (Tex.Crim.App.1972); and (6) the contraband was found on the same side of the seat on which the accused was sitting, citing *Deshong v. State*, 625 S.W.2d 327, 329 (Tex.Crim.App. [Panel Op.] 1981); *Orosco v. State*, 164 Tex.Crim. 257, 298 S.W.2d 134 (1957).

McGowan was alone in the car, and the camera bag was next to him on the seat. In addition to the cocaine found in the camera bag, there were small manila envelopes in the bag of the same type that he had handed to one of the Hispanic men. A stirring spoon of the type commonly used to sniff cocaine and a vial containing a small amount of cocaine were in plain view on the floorboard of McGowan's car. These items and these circumstances provide sufficient evidence from which the factfinder could reasonably infer that McGowan had knowledge of the contents of the camera bag. The second point of error is overruled.

■ In his third point of error, McGowan contends that the trial court erred in overruling his motion to dismiss the enhancements. The indictment contained two enhancement paragraphs, the first alleging a prior conviction of burglary with intent to commit theft [2] and the second alleging a prior conviction of the offense of delivery of oxycodone.[3]

The general provisions for enhancement are contained in Section 12.42 of Title 3 of the Penal Code. Tex.Penal Code Ann. § 12.42 (Vernon 1974 & Supp.1990). Section 1.03(b) provides that Titles 1, 2, and 3 of the Penal Code apply to offenses defined by other law, unless the statute defining the offense provides otherwise. Tex. Penal Code Ann. § 1.03(b) (Vernon 1974). It further provides that the punishment affixed to an offense defined outside the Code shall be applicable unless the punishment is clas-

---

2. Tex. Penal Code Ann. § 30.02(a)(2) (Vernon 1989).

3. Oxycodone is included in Article 4476–15, § 4.02(b)(3)(A) (Penalty Group 1), now Tex. Health & Safety Code Ann. § 481.102(3)(A) (Vernon 1990).

sified in accordance with the Penal Code. The punishments under the Controlled Substances Act are classified in accordance with the Penal Code.

The Controlled Substances Act, in Article 4476–15, Section 4.012(c), now Tex. Health & Safety Code Ann. § 481.107(f) (Vernon 1990), specifically provides that

> [a] person who is subject to prosecution under *both* this section and Section 12.42, Penal Code, may be prosecuted under either section.[4]

(Emphasis added.)

Article 4476–15, Section 4.012(a), of the Controlled Substances Act, now Tex. Health & Safety Code Ann. § 481.107(a) (Vernon 1990), provides for enhancements but only when the defendant has been previously convicted of a felony offense under that subchapter of the Controlled Substances Act.

McGowan argues that unless *both* the general and the controlled substance provisions are applicable, the sentence cannot be enhanced under the general statute (Tex. Penal Code Ann. § 12.42). The judgment states that McGowan "is the same person twice convicted of a felony." Thus, we must conclude that the trial court sentenced McGowan under the enhancement provisions of Section 12.42 of the Penal Code. The enhancements could not have been under Article 4476–15, § 4.012 of the Controlled Substances Act, because this section increases the penalty for repeat offenders only if it is shown on trial that the defendant had previously been convicted of a felony offense listed under that subchapter, which would include McGowan's prior conviction for delivery of oxycodone but could not have included the burglary offense for purposes of enhancement. Furthermore, this section, which provides its own minimum and maximum terms of confinement, depending on the classification of the offenses involved, only provides for enhancement for one prior offense and makes no mention of the possibility of two felony offenses being used for enhance-ment purposes. On the other hand, Section 12.42 of the Penal Code provides that on the trial of any felony offense if it can be shown that the defendant has been finally convicted of two prior felony offenses, the range of punishment is for not more than ninety-nine years or less than twenty-five years.

Article 4476–15, § 4.012(c) of the Controlled Substances Act is not intended as a prohibition against the use of either the enhancement provision from the Penal Code for enhancing controlled substance offenses under that provision, or alternatively enhancing controlled substance offenses with the enhancement provisions of that Act. Rather, the purpose of that section is to allow an option of using one or the other when both sections are available. If we were to take the position that controlled substance enhancement could not be used under the general enhancement provision of the Penal Code, then there could never be a situation in which *both* enhancement sections could be available for the use of one or the other. We do not believe that the Legislature intended to pass a law which could never be applied.

We find that the trial court did not err in overruling McGowan's motion to dismiss the enhancement provisions because he is subject to having his sentence enhanced by both prior convictions under the general enhancement provision of the Penal Code.

The judgment of the trial court is affirmed.

---

**4.** In codifying the Controlled Substances Act, the Legislature took the word *both* out of Section 4.012(c).