Frederick FRANKLIN, Appellant,

v.

The STATE of Texas, Appellee.

No. 09-94-110 CR.

Court of Appeals of Texas,
Beaumont.

Submitted June 21, 1995.
Decided Dec. 27, 1995.

Chris Flood, DeGuerin & Dickson, Houston, for appellant.

John B. Holmes, District Attorney, Houston, for state.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

STOVER, Justice.

This is an appeal from a felony conviction for possession, with intent to deliver, of a controlled substance. Subsequent to the trial court's denial of appellant's two motions to suppress, the case proceeded to trial before a jury which found appellant guilty, sentenced him to life imprisonment in the Texas Department of Criminal Justice, Institutional Division, and imposed a fine of $250,000.

## FACTUAL BACKGROUND

According to testimony of police officers, appellant, who was carrying one suitcase and a small sports bag, entered a bus station in Houston, Texas, on April 27, 1992. Arriving forty minutes prior to the bus's scheduled departure time, appellant hurried through the ticket lobby, stood in line at Gate 9, and placed his suitcase on the floor in line beside him. Appearing nervous, he looked back over his shoulder a couple of times and scanned the lobby. He then walked away from the line at Gate 9 down to Gate 5 or 6 and stood in that area. From that vantage point, he watched his suitcase and looked back in the direction of the lobby. At one point, he bent over, untied his shoe, and then retied it. Officer Furstenfeld further testified that Franklin looked at him and the other officers, all in plain clothes, several times. Appellant's nervousness increased. Eventually, he returned to the line at Gate 9.

As appellant approached his suitcase, he leaned over and said something to the man (Arthur Morales), who was in line in front of him. Officer Furstenfeld testified he overheard appellant tell Morales that he (appellant) needed to use the phone; appellant asked Morales to place appellant's bag on the bus if the bus boarded while he was on the phone. Appellant then left the boarding area and proceeded to the phone bank where he made several telephone calls. While he was gone, Morales boarded the bus, carried appellant's suitcase on with him, and placed it in the storage area above his head.

Along with Officer McCoy, Officer Furstenfeld then boarded the bus and asked Morales if he could speak with him. Morales agreed. Officer Furstenfeld asked Morales for consent to search the suitcase. Morales said it was not his suitcase. At that point, Officer Furstenfeld proceeded to search the bag and found what he believed to be cocaine.

While Officers Furstenfeld and McCoy boarded the bus to search the bag, Officer Stewart stayed in the terminal and followed appellant, who had gone to the phone bank to make telephone calls. While appellant was at the phones, Officer Stewart received information from the officers on the bus that the suitcase contained narcotics. Upon receiving that information, Officer Stewart approached appellant at the phone, showed appellant his identification, and asked to speak with him. Appellant agreed. Appellant told Officer Stewart that he (appellant) was going to New Orleans and showed the officer his ticket. Upon being asked about the suitcase, appellant denied having any luggage other than the sports bag in his hand. Officer Stewart then arrested him.

Appellant raises eight points of error. Since our holding on points one through three disposes of the appeal, we consider only those points, as set out below:

### Point of Error 1

The trial court erred by refusing to suppress evidence illegally obtained through a seizure of appellant's suitcase which was

unsupported by probable cause, or even a reasonable suspicion.

### Point of Error 2

The trial court erred by refusing to suppress evidence obtained through a seizure and search of appellant's suitcase which was purportedly improperly justified under the theory of abandonment.

### Point of Error 3

The trial court erred by refusing to suppress evidence illegally obtained from appellant's suitcase by virtue of an obviously unauthorized "consent" to search given by a third party.

Appellant's first three points of error concern evidence (cocaine) allegedly obtained through an illegal seizure and search of appellant's suitcase. In his motions to suppress, appellant argued that since the warrantless search was illegal, the evidence which was discovered during the search was not admissible. The trial court overruled appellant's motions to suppress.

### STANDARD OF REVIEW

In reviewing a decision on a motion to suppress, the appellate court must view the evidence in the light most favorable to the trial court's ruling. *Reyes v. State*, 899 S.W.2d 319, 322 (Tex.App.—Houston [14th Dist.] 1995, pet. ref'd.); *Winters v. State*, 897 S.W.2d 938, 940–41 (Tex.App.—Beaumont 1995, no pet.).

Absent a clear showing of abuse of discretion, the trial court's finding should not be disturbed. *Meek v. State*, 790 S.W.2d 618, 620 (Tex.Crim.App.1990); *Reyes*, 899 S.W.2d at 322. The trial judge's decision in a motion to suppress must be upheld if any theory is supported by the record, even if the record does not reflect or indicate that the judge relied upon that theory. *Spence v. State*, 795 S.W.2d 743, 755 n. 11 (Tex.Crim.App.1990); *cert. denied* 499 U.S. 932, 111 S.Ct. 1339, 113 L.Ed.2d 271 (1991); *see Sewell v. State*, 629 S.W.2d 42, 45 (Tex.Crim.App.1982); *Billey v. State*, 895 S.W.2d 417, 423 (Tex.App.—Amarillo 1995, pet. ref'd.).

At a suppression hearing, the trial judge is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Meek*, 790 S.W.2d at 620; *Nored v. State*, 875 S.W.2d 392, 394 (Tex. App.—Dallas 1994, pet. ref'd.) The trial court may believe or disbelieve all or any part of a witness' testimony. *Meek*, 790 S.W.2d at 620. The appellate court's review of evidence is limited to determining whether the trial court erred in applying the law to the facts. *Flores v. State*, 895 S.W.2d 435, 440 (Tex.App.—San Antonio 1995, no pet.); *Nored*, 875 S.W.2d at 394.

### SEARCH AND SEIZURE ISSUES

When a defendant seeks to suppress evidence because of an illegal search and seizure that violates the federal and/or state constitution, he bears the initial burden of rebutting the presumption of proper police conduct. *Russell v. State*, 717 S.W.2d 7, 9 (Tex.Crim.App.1986); *De La Paz v. State*, 901 S.W.2d 571, 575 (Tex.App.—El Paso 1995, pet ref'd.). The defendant meets this burden by establishing that a search or seizure occurred without a warrant. *De La Paz*, 901 S.W.2d at 575.

In the instant case, it is undisputed that the police did not have a warrant when they searched Franklin's suitcase. A search conducted without a warrant is per se unreasonable and, therefore, illegal under the Fourth Amendment. *Fancher v. State*, 659 S.W.2d 836, 839 (Tex.Crim.App.1983). Once it is established that the search was conducted without a warrant, the burden is on the state to prove the reasonableness of the search. *Russell*, 717 S.W.2d at 10.

The concept of "reasonableness" has two elements. First, the search must be supported by probable cause. Secondly, if not made pursuant to a warrant, the search must be conducted under circumstances which dispense with the warrant requirement. *See Schmerber v. California*, 384 U.S. 757, 768–770, 86 S.Ct. 1826, 1834–36, 16 L.Ed.2d 908, 918–919 (1966); *McNairy v. State*, 835 S.W.2d 101, 106 (Tex.Crim.App. 1991). "Probable cause for a search exists where the facts and circumstances within the knowledge of the officer on the scene and of

which he has reasonably trustworthy information would lead a man of reasonable caution and prudence to believe that he will find the instrumentality of a crime or evidence pertaining to a crime." *Brown v. State*, 481 S.W.2d 106, 110 (Tex.Crim.App.1972); *Ackenback v. State*, 794 S.W.2d 567, 572 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd.). The State must show that it had probable cause at the time of the search or arrest. *See McNairy*, 835 S.W.2d at 106.

■■■ "The inarticulate hunch, suspicion, or good faith of an arresting officer is insufficient to constitute probable cause." *Brown*, 481 S.W.2d at 110; *Ackenback*, 794 S.W.2d at 572. The reviewing court must look to the "totality of the circumstances" to determine if there exists a substantial basis for concluding that probable cause existed at the time of the questioned action. This test is used for *both* warrantless and warrant seizures of persons and property. *Eisenhauer v. State*, 754 S.W.2d 159, 164 (Tex.App.Crim.); *cert denied*, 488 U.S. 848, 109 S.Ct. 127, 102 L.Ed.2d 101 (1988), *overruled on other grounds by Heitman v. State*, 815 S.W.2d 681 (Tex.Crim.App.1991).

■■■ In the instant case, appellant's conduct did not give the police probable cause to search his suitcase. The facts and circumstances testified to by the officers would not lead a person of reasonable caution and prudence to believe that he would find in the suitcase evidence pertaining to a crime. Under the "totality of the circumstances" standard, the following facts do not give rise to either reasonable suspicion (the standard for temporary detention) or probable cause (the standard for search and seizure of property and persons):

1. Arrived 40 minutes early to the bus station;

2. Was in a hurry;

3. Arrived with pre-purchased ticket;

4. Appeared nervous;

5. Carried two bags (one medium-sized, the other small);

6. Put his bag down and temporarily walked away from it;

7. Paced back and forth;

8. Stooped down to untie and re-tie his shoe;

9. Asked a person to watch his bag while he went to make a phone call;

10. Asked a person in line at the boarding gate to take his suitcase on the bus if the bus began loading passengers while he was using the phone; and

11. Went to make phone calls.

Such actions, either taken together or separately, do not lead one to believe a crime has been committed or that the luggage contains contraband. As noted above, an investigating officer's hunch, suspicion, or good-faith perception is not sufficient alone to constitute probable cause for a warrantless search. *McGowan v. State*, 792 S.W.2d 155, 158 (Tex. App.—Texarkana 1990, no pet.). Perceived events must be out of the ordinary, suspicious, and tie the suspect with a criminal act. The suspect's conduct cannot be as consistent with innocent activity as with a criminal act. *Id.* at 158.

In describing appellant's conduct, the officers saw and testified to activities that were as consistent with innocent activity as with a criminal act. Consequently, they did not have probable cause to search appellant's suitcase. In the absence of any basis for suspecting appellant of misconduct, the balance between the public interest and appellant's right to privacy tilts in favor of freedom from police interference. *Brown v. Texas*, 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357, 363 (1979).

## ABANDONMENT

■■■ The State contends on appeal that appellant did not have a legitimate expectation of privacy in the suitcase, because he had abandoned it prior to the officers' search. Without a privacy interest in the bag, appellant has no standing to contest its seizure and seek its suppression as evidence. *O'Shea v. State*, 740 S.W.2d 527, 528 (Tex. App.—Houston [14th Dist.] 1987, no pet.). According to the State, Franklin abandoned the suitcase prior to the search when he set it down in the line and walked away from it.

**240**

"The general rule in Texas with respect to abandoned property has been that '[w]hen police take possession of abandoned property, there is not a seizure under the Fourth Amendment.'" *Hawkins v. State*, 758 S.W.2d 255, 257 (Tex.Crim.App.1988), quoting *Clapp v. State*, 639 S.W.2d 949, 953 (Tex.Crim.App.1982). For abandonment to occur, however, a defendant must (1) intend to abandon the property, and (2) freely decide to abandon the property; *i.e.*, the decision must not be merely the product of police misconduct. *Salcido v. State*, 758 S.W.2d 261, 263 (Tex.Crim.App.1988); *Reyes*, 899 S.W.2d at 325.

In the instant case, Officer Furstenfeld testified that he overheard the exchange of comments between Franklin and Morales wherein Franklin asked Morales to put his bag on the bus for him if the bus began boarding while he (Franklin) was on the phone. By such conduct, Franklin did not disavow ownership of the bag. On the contrary, he watched the suitcase while it was sitting in line, he entrusted it temporarily to Morales, and he gave specific instructions to Morales on what to do with the suitcase. Those actions do not constitute abandonment. It was only after the officers had already searched the suitcase on the bus that Officer Stewart approached Franklin at the phone bank in the terminal and asked to speak to him. Without telling Franklin that his suitcase had already been searched and the contraband found, Officer Stewart identified himself as a narcotics officer and asked Franklin if he had any luggage besides the small bag. At that point, Franklin said no. The officer then arrested him.

The State claims that Franklin's disavowal of ownership of the suitcase after it had already been searched is, likewise, evidence of abandonment. However, any alleged abandonment after the search, whether appellant actually knew of the search or not at the time of his disavowal, does not validate the prior illegal search.

Appellant had an expectation of privacy in the suitcase at the time it was searched. This is unlike most "abandonment" situations where the defendant abandoned or disclaimed ownership prior to the search by police. *See United States v. Garcia*, 849 F.2d 917, 918–919 (5th Cir.1988); *State v. Grant*, 832 S.W.2d 624, 627 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd.) Under those circumstances, where the abandonment occurs prior to the search, there is clearly no Fourth Amendment violation, since the defendant has no legitimate expectation of privacy in property which he has already abandoned. *Garcia*, 849 F.2d at 919. Here, however, appellant had a privacy expectation in the suitcase at the time of the search, as revealed by the officers' own testimony at the suppression hearing.

As the Supreme Court has stated, the capacity to claim the protection of the Fourth Amendment depends upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place. *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978), citing *Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967). A legitimate expectation of privacy incorporates two elements: (1) whether the defendant exhibited an actual (subjective) expectation of privacy; (2) whether the defendant's subjective expectation is one that society is prepared to recognize as reasonable. *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979). The Supreme Court has further held that there is no "automatic standing." *United States v. Salvucci*, 448 U.S. 83, 85, 100 S.Ct. 2547, 2549–50, 65 L.Ed.2d 619 (1980). Merely because a person is on the premises or has been charged with crimes of possession does not mean that he may automatically challenge the legality of a search. *Salvucci*, 448 U.S. at 91–92, 100 S.Ct. at 2552–53; *Rakas*, 439 U.S. at 147–149, 99 S.Ct. at 432–33. Only individuals whose Fourth Amendment rights have been violated are entitled to benefit from the exclusionary rule's protection. *Rakas*, 439 U.S. at 134, 99 S.Ct. at 425–26. In the instant case, it is not some third party's privacy and Fourth Amendment rights which have been violated; it is appellant's.

At the time of the search of Franklin's suitcase, he had an expectation of privacy in its contents; he had not abandoned or dis-

claimed it and had not given consent to its search. Furthermore, the search was not made incident to his arrest. The officers had no warrant to search the suitcase, and no valid exception to the warrant requirement existed. Consequently, the search of appellant's suitcase at a time when appellant exhibited a legitimate expectation of privacy in it was an improper, warrantless search and constituted a violation of his Fourth Amendment rights to be free from unreasonable search and seizure. The cocaine, having been seized *prior* to any alleged abandonment by appellant, was the product of an illegal seizure and should have been suppressed.

## CONSENT

■ On appeal, the State's argument regarding the legitimacy of the warrantless search was based on the theory of abandonment. Consent to search was not argued by the State. However, the suppression ruling will be sustained if it can be upheld on any valid theory regardless of whether the State argued it at trial or on appeal. *See Lewis v. State,* 664 S.W.2d 345, 347 (Tex.Crim.App. 1984); *Nored,* 875 S.W.2d at 395. In the instant case, the State did not raise the recognized exceptions to the requirements of a warrant and probable cause—*i.e.,* consent, search incident to an arrest, administrative search, or *Terry* frisk. The latter three are not applicable here. The search of Franklin's suitcase occurred prior to his arrest; the *Terry* frisk and administrative search were not involved at all.

■ Although the State did not argue the issue of consent on appeal, we will nonetheless consider its applicability. The constitutional proscriptions against warrantless searches and seizures do not come into play when a person gives free and voluntary consent to a search. Whether consent was given freely and voluntarily is to be answered by looking at the totality of the circumstances surrounding the consent. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854, 862 (1973); *Fancher,* 659 S.W.2d at 839. A valid consent to search may be given not only by the defendant, but also by anyone who possesses common authority over, or other sufficient relationship to, the premises or effects to be searched. *United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242, 250 (1974).

■ The authority of a third party to consent to a search rests exclusively on the mutual use concept. In the instant case, the testimony of the officers themselves revealed it was their opinion that Morales did not know Franklin, did not know what was in the bag, and did not have any property in the bag. According to the officers' testimony, Franklin never gave Morales permission to open the bag; he merely entrusted the bag to Morales for the limited purpose described above. In brief, Morales never had equal control over or use of the property which would have given him the authority to consent to a search. *Becknell v. State,* 720 S.W.2d 526, 528 (Tex.Crim.App.1986), *cert. denied,* 481 U.S. 1065, 107 S.Ct. 2455, 95 L.Ed.2d 865 (1987). Nor did Morales have "apparent authority" under *Illinois v. Rodriguez,* 497 U.S. 177, 188, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148, 161 (1990), since Officer Furstenfeld had actual knowledge of the limited authority which Morales had over the bag. Thus, on the basis of the conversation between Franklin and Morales, Officer Furstenfeld knew that Morales did not have joint use, joint control, or joint authority over the bag. Consequently, he could not have reasonably believed that Morales possessed authority to consent to the search of the suitcase. Presumably, that is why the State did not urge that argument. There was no valid third party consent to the search of the suitcase.

As the record in the instant case reveals, there was no warrant to search the suitcase, no probable cause to do so, no abandonment by appellant, and no authority to consent by Morales. Consequently, the trial court erred in failing to suppress evidence which was the product of an illegal search. TEX.CODE CRIM. PROC.ANN. art. 38.23 (Vernon 1979 & Supp. 1996). Appellant's points of error one, two, and three are sustained. The judgment of the trial court is reversed, and the cause is remanded to the trial court for a new trial.

REVERSED AND REMANDED.

WALKER, Chief Justice, concurring.

The evidence is clear that appellant expressed an ownership interest in the suitcase prior to the illegal search. Thus, this warrantless search encroaches upon appellant's privacy expectation protected by the Fourth Amendment.

In my opinion the majority has properly applied the law according to its present state, therefore, I concur. It would seem, however, that a post search disavowal of interest (abandonment) in the property searched also disavows or abandons privacy expectation therefore depriving appellant of standing to complain of Fourth Amendment violation.