The STATE of Texas, Appellant,

v.

Mark Steven BELL, Appellee.

Nos. 14–10–00771–CR, 14–10–00772–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 16, 2011.

Rehearing En Banc Overruled
Dec. 7, 2011.

David Christopher Newell, Houston, for
Appellant.

Ricky A. Raven, Houston, for Appellee.

Panel consists of Justices ANDERSON, BROWN, and CHRISTOPHER.

## OPINION

PER CURIAM.

The State of Texas brings this appeal from the trial court's order granting appellee Simon Property Group Inc.'s motion to suppress. The State charged appellee with two counts of unauthorized discharge of industrial waste. Appellee filed a motion to suppress in both cases. The trial court granted the motions to suppress, prompting this appeal by the State.

This case involves a search and seizure of wastewater samples in the yellow and blue parking garages of the Westin Galleria hotel and the Houston Galleria shopping mall. On November 1, 2006, Sheree Moore (formerly Sheree Penick), who ran a pressure-washing business, called Sergeant Walsh, a Houston Police Department investigator assigned to investigate environmental crimes, and informed him wastewater was being illegally dumped from a pressure-washing operation being conducted in the yellow garage. Sergeant Walsh arrived, and with Moore, proceeded from the parking garage to the loading dock area. Inside the loading dock area, Sergeant Walsh took photographs of the pressure-washing residue and took four wastewater samples. On November 3, 2006, Moore again called Sergeant Walsh and informed him wastewater was being illegally dumped from a pressure-washing operation being conducted in the blue garage. Sergeant Walsh took photographs of the pressure-washing residue and took two environmental samples.

Subsequently, four parties, Mark Steven Bell, Simon Property Group, Inc., Millard Mall Services, Inc., and Robert Gerardo Sepeda, were charged with unauthorized discharge of industrial waste. Mark Bell is an employee of Simon Management Associates, the management company for the Galleria. Simon Property Group's relationship to the Galleria was not identified, either by the trial court in its findings or by Simon Property Group in its brief. Millard Mall Services is a janitorial and cleaning contractor for the Galleria Premises. Robert Sepeda is a Senior Project Manager for Millard Mall Services.

Mark Bell and Simon Property Group filed a motion to suppress and a hearing was held. The trial court granted the motions to suppress and entered findings of fact and conclusions of law. Counsel for Millard Mall Services and Robert Sepeda was present at the hearing on the motions to suppress but did not participate. Millard Mall Services and Robert Sepeda then filed motions to suppress that relied upon those filed by Mark Bell and Simon Property Group, and asked the trial court to make the same findings on their motions to suppress. No hearing was held on the motions to suppress filed by Millard Mall Services and Robert Sepeda. The trial court granted the motions to suppress and entered findings of fact and conclusions of law in which the findings made regarding Mark Bell and Simon Property Group were adopted.

The trial court's findings and conclusions reflect the motions to suppress were granted for the following reasons. The searches were made without a warrant and no exception to the warrant requirement under Texas law applied. Sheree Moore, acting as an agent of the State, and Sergeant Walsh committed the offense of criminal trespass. *See* Tex. Pen.Code § 30.05 (West 2011). Accordingly, the seized evidence was inadmissible under the exclusionary rule. *See* Tex.Code Crim. Proc. art. 38.23 (West 2005). The search was unreasonable under the United States

Constitution. *See* U.S. Const. amend. IV. There was no valid consent to search. Finally, the State waived its argument under section 26.014 of the Texas Water Code but, even if it were not waived, the State did not establish the applicability of section 26.014 to justify the warrantless searches. *See* Tex. Water Code § 26.014 (West 2008). The State has appealed the trial court's decision as to all four defendants.

■ The State's first issue is whether appellee has standing to challenge the search and seizure. The State asserts appellee did not have a legitimate expectation of privacy in the Galleria hotel parking garage.

■ A defendant bringing a motion to suppress bears the burden of establishing that he had a reasonable expectation of privacy from law enforcement intrusion. *See State v. Mercado,* 972 S.W.2d 75, 78 (Tex.Crim.App.1998) (per curiam); *see also Wilson v. State,* 692 S.W.2d 661, 663–64 (Tex.Crim.App.1984); *Trinh v. State,* 974 S.W.2d 872, 874 (Tex.App.-Houston [14th Dist.] 1998, no pet.); and *Kelley v. State,* 807 S.W.2d 810, 815 (Tex.App.-Houston [14th Dist.] 1991, pet. ref'd). Accordingly, the State may raise the issue of standing for the first time on appeal in a court of appeals. *See State v. Klima,* 934 S.W.2d 109, 111 (Tex.Crim.App.1996). *See also State v. Consaul,* 982 S.W.2d 899, 903 (Tex.Crim.App.1998), and *State v. Mercado,* 972 S.W.2d 75, 78 (Tex.Crim.App.1998).

Appellee challenged the search of the two parking garages under the United States and Texas Constitutions and article 38.23 of the Texas Code of Criminal Procedure. *See* U.S. Const. amend. IV; Tex. Const. art. I, § 9; and Tex.Code Crim. Proc. art. 38.23 (West 2005). "To assert a challenge to a search and seizure under the United States and Texas Constitutions and article 38.23, a party must first establish standing. *See Villarreal v. State,* 935 S.W.2d 134, 138 (Tex.Crim.App.1996)." *Pham v. State,* 324 S.W.3d 869, 874 (Tex. App.-Houston [14th Dist.] 2010, pet. ref'd). Standing is a question of law which we review de novo. *Kothe v. State,* 152 S.W.3d 54, 59 (Tex.Crim.App.2004); *Turner v. State,* 132 S.W.3d 504, 507 (Tex. App.-Houston [1st Dist.] 2004, pet. ref'd).

■ To determine if appellee had a legitimate expectation of privacy, we first determine whether appellee demonstrated an actual subjective expectation of privacy. *Pham,* 324 S.W.3d at 874–75. If so, we then decide whether appellee's subjective expectation of privacy was one that society is prepared to regard as objectively reasonable. *Id.*

Appellee did not testify at the hearing. The trial court found appellee "was employed by Simon Management Associates …" and that "the management company for the Galleria at the time of the Discharges was Simon Management Associates …" The record reflects appellee holds the job title "Mall Manager V." Appellee asserts that as the management company for the Galleria, Simon Management Associates had a reasonable expectation of privacy in the Galleria Premises at the time of the searches. While an owner or operator of a business has an expectation of privacy in commercial property, that would allow Simon Management Associates to challenge the search, not appellee.

Appellee argues that as "an employee of Simon Management allegedly responsible for care, custody, and control of the Galleria Premises, Appellee Mark Steven Bell had the same reasonable expectation. Business owners or managers are entitled to the protection of the Fourth Amendment for searches and seizures conducted on their own private commercial premises." Appellee cites *United States v. Gon-*

*zalez, Inc.*, 412 F.3d 1102 (9th Cir.2005), in support.

In *Gonzalez*, the court noted it had previously held that owners of the premises where an illegal wiretap occurs have standing to challenge the interception, even if the owners did not participate in the intercepted conversation. *Id.* at 1116. The government argued those cases were distinguishable because they involved residential, not commercial properties, and an individual's expectation of privacy is lower in a commercial property. *Id.* The court found the cases were not distinguishable from the case at bar because it involved a small, family-run business of only 25 employees, maximum.

> In such an office, individuals who own who own and manage the business operation have a reasonable expectation of privacy over the on-site business conversations between their agents. In reaching this result, we do not rule out the possibility that the hands-off executives of a major corporate conglomerate might lack standing to challenge all intercepted conversations at a commercial property that they owned, but rarely visited. Instead, we simply hold that because the Gonzalezes were corporate officers and directors who not only had ownership of the Blake Avenue office but also exercised full access to the building as well as managerial control over its day-to-day operations, they had a reasonable expectation of privacy over calls made on the premises.

*Id.* at 1116–117. In the instant case, there is no evidence of the extent of Simon Management Associates' involvement in the day-to-day operations of the parking garages. In *Gonzalez*, the owner of the business, who also exercised managerial control, was allowed to challenge the interception. Appellee is not the owner of the business and the extent of his managerial control, if any, over the parking garages, is not demonstrated in the record before this court. *Gonzalez* is inapposite to the case at bar.

Appellee points to the "signs, gates, and other notices" as evidence of an expectation of privacy. However, the record establishes neither appellee nor Simon Management Associates were responsible for display of those signs and notices. Robert DeLaGarza, an employee of Standard Parking, testified he put the signs up, as noted in the trial court's findings of fact. The record does not demonstrate that appellee took any action that exhibited an expectation of privacy.

■ Appellee relies upon the fact that he has been charged with the offense on the allegation he had care, custody, and control of the premises. Being charged with the crime does not mean appellee may automatically challenge the legality of the search. *See Franklin v. State*, 913 S.W.2d 234, 240 (Tex.App.-Beaumont 1995, pet. ref'd). *See also Hollis v. State*, 219 S.W.3d 446, 457–58 (Tex.App.-Austin 2007, no pet.) ("An accused lacks standing to challenge the admission of evidence obtained by searching an area in which he or she does not have a legitimate expectation of privacy.").

■ The right against an unreasonable search and seizure is a personal right which may not be vicariously asserted. *Pham*, 324 S.W.3d at 874.

> "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas [v. Illinois]*, 439 U.S. [128] at 134, 99 S.Ct. 421, 58 L.Ed.2d 387 [(1978)]. "And since the exclusionary rule is an attempt to effectuate the guarantees of

the Fourth Amendment, it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections." *Id.* (citations omitted).

*Id.* The record reflects the evidence suppressed by the trial court was secured by a search of a third person's premises or property.

■ Under the record presented, we conclude that appellee failed to establish any state or federal constitution privacy interest. Therefore, appellee did not meet its burden of establishing all the elements necessary to object to the search and seizure of the evidence under the United States and Texas Constitutions. *See Pham,* 324 S.W.3d at 874. Furthermore, article 38.23(a) does not confer third-party standing to persons accused of crimes, such that they may complain about the receipt of evidence that was obtained by violation of the rights of others, no matter how remote an interest from themselves. *See Miles v. State,* 241 S.W.3d 28, 47 (Tex. Crim.App.2007). Accordingly, we conclude the trial court erred in granting appellee's motions to suppress and sustain the State's first issue.

We reverse the trial court's order granting appellee's motions to suppress and remand for further proceedings consistent with this opinion.