TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00634-CR


NO. 03-98-00672-CR


NO. 03-98-00697-CR







The State of Texas, Appellant



v.



Jessica Anne Hancock, Appellee



&



William Henry Wall, Appellee



&



Betty Floyd Wall, Appellee







FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT


NOS. 8408, 8494 & 8405, HONORABLE VIRGIL MULANAX, JUDGE PRESIDING







 The State of Texas appeals the rulings partially granting three motions to suppress
evidence in companion cases. See Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (West Supp.
2000). Appellees Jessica Anne Hancock and Betty Floyd Wall were each indicted for intentionally
or knowingly manufacturing a controlled substance, to wit: methamphetamine, in the amount of
400 grams or more on or about October 15, 1997. Appellee William Henry Wall was indicted
for intentionally and knowingly possessing a controlled substance, to wit: methamphetamine in
an amount of 400 grams or more on or about October 15, 1997.


Suppression Allegations


 William Henry Wall and Jessica Anne Hancock each filed a pretrial motion to
suppress evidence seized as a result of a search at the 22.62-acre Wall property in Burnet County
on October 15, 1997. Each motion alleged that the evidence seized at locations 2, 3, 4, 5, and
6 as reflected by the return and inventory on the search warrant was outside the scope of the
search warrant based on an affidavit describing the property.

 Betty Floyd Wall also filed a motion to suppress evidence alleging the same
contention. In addition, she sought to suppress all tangible evidence, and all statements made by
her, and urged that the affidavit and search warrant failed to reflect probable cause to search. All
parties relied in their suppression motions on the Fourth and Fourteenth Amendments to the
United States Constitution, article I, section 9 of the Texas Constitution, and article 38.23 of the
Texas Code of Criminal Procedure. Tex. Code Crim. Proc. Ann. art. 38.23 (West Supp. 2000).


The Rulings


 After a pretrial suppression hearing where the main focus was on the property
description, the trial court granted each of the motions to suppress in part and overruled the
"remainder" of the motions. The trial court filed written findings of fact and conclusions of law
principally finding that locations or structures 2 and 3 on the property searched, as reflected by
the return and inventory on the search warrant, were not within the purview of the area authorized
to be searched. The items found at those locations were ordered suppressed. All other items
found at other locations on the property were found to be admissible. The State gave notice of
appeal as to the adverse rulings by the trial court.


Points of Error


 In cause nos. 03-98-00634-CR and 03-98-00672-CR involving appellees Jessica
Anne Hancock and William Henry Wall, respectively, the State advances six points of error. In
the first three points of error, the State urges that these appellees did not have a reasonable
expectation of privacy in the property and locations searched and therefore did not have standing
to complain of the search and seizures, that the trial court erred in partially granting the
suppression motions of these appellees because they lacked standing to complain, and that the trial
court erred in not requiring these appellees to prove standing when challenged by the State.

 In the last three points of error, the State argues that the trial court erred in partially
granting the motions to suppress because the trial court's findings and conclusions that (1) the
search warrant and affidavit did not describe the "specific" five acres that were to be searched
within the 22.62-acre Wall ranch, that (2) locations 2 and 3 were not within the appropriate five
acres, and that (3) the implication that locations 2 and 3 were outside the scope of the authorized
search was not supported by the record and misapplied the law as to the scope and sufficiency of
the search warrant.

 In cause no. 03-98-00697-CR involving Betty Floyd Wall, the State advances only
the last three points urged in the other cases but numbers the points of error as 1, 2, and 3.

Standing


 As the movant in a pretrial motion to suppress, the defendant has the initial burden
of producing evidence that defeats the presumption of proper police conduct. See Russell v. State,
717 S.W.2d 7, 9 (Tex. Crim. App. 1986); Ashcraft v. State, 934 S.W.2d 727, 735 (Tex.
App.--Corpus Christi 1996, pet. ref'd). In the instant case, the appellees had the initial burden of
proof with regard to their motions to suppress challenging the validity of the search and seizure
on the Wall property. The appellees based their claims in part upon the Fourth Amendment to
the United States Constitution. See Mapp v. Ohio, 367 U.S. 643 (1961) (exclusionary rule
applicable to states by virtue of Fourteenth Amendment).


 The Supreme Court of the United States has long limited the Fourth
Amendment exclusionary rule by imposing a requirement that a defendant seeking
to invoke exclusion have "standing." "Standing" means that the defendant's
objection to the evidence must be based upon a violation of his own underlying
rights, i.e., upon conduct that intruded upon his own protected interests. 
Extending the right of exclusion to others, the Court has explained, would not
provide sufficient additional deterrence to improper law enforcement activity to
justify the cost that would be incurred in terms of loss of reliable evidence.



40 George E. Dix & Robert O. Dawson, Criminal Practice and Procedure, § 4.52 at p. 151
(Texas Practice 1995) (citing Alderman v. United States, 394 U.S. 165, 174-75 (1969)).


 When a defendant's objection to evidence is based upon a claimed Fourth
Amendment violation, the Supreme Court has made clear, that defendant's ability
to rely upon the specific Fourth Amendment violation he raises is not determined
by a separate body of "standing" law. Rather, it is a matter of determining
whether the unconstitutional conduct on which he relies violated his own Fourth
Amendment rights. That, in turn, depends upon "substantive Fourth Amendment
doctrine" defining interests protected under that provision and situations in which
those interests are infringed.



40 Dix, § 4.52 at 15 (citing Rakas v. Illinois, 439 U.S. 128, 140 (1978)); see also Dean v. State,
938 S.W.2d 764, 761 n.4 (Tex. App.--Houston [14th Dist.] 1997, no pet.). Standing to complain
about a search or seizure has been abolished as a distinct procedural step to be utilized in
determining whether a person is entitled to complain. See Rawlings v. Kentucky, 448 U.S. 98,
104 (1980); Rakas, 439 U.S. at 138-40. Rakas has made plain that the question of standing is an
issue going to the merits of a defendant's Fourth Amendment claim. See Wilson v. State, 692
S.W.2d 661, 667 (Tex. Crim. App. 1984). It is not determined by a separate body of "standing"
law. See Rakas, 439 U.S. at 140. The defendant has the burden of showing not only that the
search and seizure were illegal, but that he had a reasonable expectation of privacy in the premises
searched. See Rawlings, 448 U.S. at 104; Puente v. State, 888 S.W.2d 521, 525 (Tex. App.--San
Antonio 1994, no pet.).

 In order to present a state or federal constitutional claim based on unlawful search
and seizure, a defendant must be within the purview of constitutional protections. See State v.
Comeaux, 818 S.W.2d 46, 51 (Tex. Crim. App. 1991). A defendant must establish that (1) he
had a legitimate subjective expectation of privacy in the place or property searched, and (2) that
society would recognize the subjective expectation as objectively reasonable. (1) Id. at 51 (citing
Smith v. Maryland, 442 U.S. 735, 740 (1979)). The defendant, because he has greater access to
the relevant evidence, has the burden of proving a legitimate expectation of privacy. See
Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); Calloway v. State, 743 S.W.2d
645, 650 (Tex. Crim. App. 1988). Appellees thus had the burden at the suppression hearing of
proving from the totality of the circumstances that the search and seizure which produced the
evidence was unreasonable and it violated his or her own legitimate expectation of privacy in the
place searched. See Minnesota v. Olson, 495 U.S. 91, 95-96 (1990).

 Factors relevant to this determination include the following: (1) whether the
accused had a property or possessory interest in the place invaded; (2) whether he was legitimately
in the place involved; (3) whether he had complete dominion or control and the right to exclude
others; (4) whether, before the intrusion, he took normal precautions customarily taken by those
seeking privacy; (5) whether he put the place to some private use; and (6) whether his claim of
privacy is consistent with historical notions of privacy. See Villarreal, 935 S.W.2d at 138;
Calloway v. State, 743 S.W.2d 645, 650 (Tex. Crim. App. 1988); Angelo v. State, 977 S.W.2d
169, 175 (Tex. App.--Austin 1998, pet. ref'd); Green v. State, 971 S.W.2d 639, 642 (Tex.
App.--Houston [14th Dist.] 1998, pet. ref'd) (defendant has burden to prove standing from totality
of circumstances).

 Merely because a person is on the premises searched or because he has been
charged with the crime of possession does not mean that he may automatically challenge the
legality of a search. See United States v. Salvucci, 448 U.S. 83, 85, 91-92 (1980); Castro v.
State, 914 S.W.2d 159, 164 (Tex. App.--San Antonio 1995, pet. ref'd); Franklin v. State, 913
S.W.2d 234, 240 (Tex. App.--Beaumont 1995, pet. ref'd); Puente, 888 S.W.2d at 525.


"Standing" on Appeal


 State v. Klima, 934 S.W.2d 109 (Tex. Crim. App. 1996), held that the State may
raise for the first time on appeal (in a court of appeals) the issue of standing regardless of whether
the defendant's motion to suppress evidence was granted or denied and even when the record does
not reflect that the issue was ever considered by the parties or the trial court. See id. at 110-11. (2) 
By bringing his motion to suppress, a defendant assumes the burden of establishing all the
elements of his Fourth Amendment claim. See id. at 111 (citing Rakas, 439 U.S. at 149-50). By
raising the issue of standing for the first time on appeal, the State is not raising a new issue. It
is challenging the trial court's holding that the defendant met his burden of establishing standing. 
See Klima, 934 S.W.2d at 111; see also State v. Mercado, 972 S.W.2d 75, 78 (Tex. Crim. App.
1978).

 In Mercado, the Court of Criminal Appeals held that ordinary notions of procedural
default should apply equally to the defendant and the State. See id. at 78. The court wrote:
"Therefore we hold that in cases in which the State is the party appealing, the basic principle of
appellate jurisdiction that points not argued [raised] are deemed to be waived applies equally to
the State and the defense." Id. Mercado did not overrule Klima but limited the Klima line of
cases to the issue of standing. See id.; see also State v. Consaul, 982 S.W.2d 899, 904 (Tex.
Crim. App. 1998) (Keller, J., dissenting).

 Our discussion of a Fourth Amendment claim is equally applicable to a claim under
article I, section 9 of the Texas Constitution, see Villarreal, 935 S.W.2d at 138, and to a claim
under article 38.23(a). See Tex. Code Crim. Proc. Ann. art. 38.23(a) (West Supp. 2000); Fuller
v. State, 829 S.W.2d 191, 202 (Tex. Crim. App. 1991); Garcia v. State, 960 S.W.2d 329, 332
(Tex. App.--Corpus Christi 1997, no pet.).

 We turn now to the law relating to suppression hearings because the instant
contested rulings were made in one.


Motions to Suppress Evidence


 In a suppression hearing, the trial court is the sole trier of fact and judge of the
credibility of the witnesses and the weight to be given their testimony. See Romero v. State, 800
S.W.2d 539, 543 (Tex. Crim. App. 1990). The trial court may accept or reject any or all of a
witness's testimony. See Alvarado v. State, 853 S.W.2d 17, 23 (Tex. Crim. App. 1993); Allridge
v. State, 850 S.W.2d 471, 492 (Tex. Crim. App. 1991). The trial court resolves all conflicts in
the testimony. See Hawkins v. State, 853 S.W.2d 598, 600 (Tex. App.--Amarillo 1993, no pet.). 
In the absence of findings of fact, the appellate court will presume that the trial court found the
facts needed to support its ruling so long as those implied findings are supported by the record. 
See Josey v. State, 981 S.W.2d 831, 837 (Tex. App.--Houston [14th Dist.] 1998, pet. ref'd); State
v. Simmang, 945 S.W.2d 219, 221-22 (Tex. App.--San Antonio 1997, no pet.); State v.
Rivenburgh, 933 S.W.2d 698, 700 (Tex. App.--San Antonio 1996, no pet.). An appellate court
must view the evidence in the light most favorable to the trial court's ruling at the suppression
hearing. See Upton, 853 S.W.2d at 553. The reviewing court is not at liberty to disturb
supported findings of fact absent an abuse of discretion. See Etheridge v. State, 903 S.W.2d 1,
15 (Tex. Crim. App. 1994); Cantu v. State, 817 S.W.2d 74, 77 (Tex. Crim. App. 1991). The
totality of the circumstances is considered in determining whether the trial court's decision is
supported by the record. See Dancy v. State, 728 S.W.2d 772, 777 (Tex. Crim. App. 1987). 
Normally, the reviewing court will address only the question of whether the trial court properly
applied the law to the facts. See Romero, 800 S.W.2d at 543; Self v. State, 709 S.W.2d 662, 664-65 (Tex. Crim. App. 1986). The trial court's decision is upheld if it is correct on any theory of
the law applicable to the case. See Romero, 800 S.W.2d at 543.

 Guzman v. State, 955 S.W.2d 85 (Tex. Crim. App. 1997), has attempted to
"clarify" the standard of review in pretrial suppression hearings. In the process, the decisions in 
Dubose v. State, 915 S.W.2d 493 (Tex. Crim. App. 1996) and State v. Carter, 915 S.W.2d 501
(Tex. Crim. App. 1996) were overruled. Guzman held that, as a general rule, appellate courts
should afford almost total deference to a trial court's determination of the historical facts that the
record supports, especially when the trial court's fact findings are based on an evaluation of
credibility and demeanor. The same amount of deference should be afforded the trial court's
rulings on the application of law to fact questions, referred to as mixed questions of law and fact,
if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. 
However, mixed questions of law and fact may be reviewed de novo where the resolution of those
ultimate questions is not restricted to an evaluation of credibility and demeanor. See id. at 89.

 With the continued interpretation of Guzman, the case law is roughly consistent
with that expressed earlier in Romero, 800 S.W.2d at 543. See Fecci v. State, No. 04-98-00695-CR, slip op. at 14 (Tex. App.--San Antonio Oct. 20, 1999, no pet. h.). Under no circumstances 
is deference to be given to the trial court's misapplication of the law.


Suppression Hearing--In Re: Standing


 At the commencement of the suppression hearing on all three motions, the State
challenged the "standing" of the three appellees to question the search and seizure. The trial court
pointed out that it had heard no evidence and was not in a position to rule on the matter at that
time. The issue of "standing" cannot be made a precondition to testing the validity of a search
and seizure. See Calloway, 743 S.W.2d at 647 n.1. This is so because "standing" is a
substantive element of a Fourth Amendment claim with the burden upon the defendant asserting
such claim as explained earlier. The trial court correctly rebuffed the State's challenge to
"standing" at the time. The premature challenge should have alerted the appellees to their burden. 
At the conclusion of the hearing, the trial court granted all three motions to suppress as to the
search and seizure at locations 2 and 3 on the Wall property. We presume that the trial court
found appellees Jessica Anne Hancock and William Henry Wall had sustained their burden and
established standing. See Josey, 981 S.W.2d at 837. To carry their burden, these appellees had
to show an actual subjective expectation of privacy in the premises searched and that
circumstances existed under which society was prepared to recognize their subjective expectation
as objectively reasonable. The second portion of this burden is a question of law which must be
decided de novo by the court of appeals. See Villarreal, 935 S.W.2d at 138-39; Rovnak v. State,
990 S.W.2d 863, 867 n.7 (Tex. App.--Texarkana 1999, pet. ref'd).


Jessica Anne Hancock


 With the foregoing background, we turn to the State's points of error that appellee
Jessica Anne Hancock did not prove standing as part of her Fourth Amendment claim, in fact
lacked standing, and the trial court erred in granting Hancock's motion to suppress in part because
she lacked standing.

 An examination of the record shows that appellee Hancock did not allege
"standing" in her motion to suppress. Moreover, she did not prove "standing" as a part of her
claim. Although represented by counsel, Hancock asked few, if any, questions of the two
witnesses at the suppression hearing, and offered no testimony as to her "standing," an element
of her Fourth Amendment claim. An examination of the testimony reveals little mention of
Hancock. Betty Floyd Wall was the only appellee to testify at the suppression hearing. On her
cross-examination by the prosecutor, the record reflects:


Q. And who is Kimberly Wier?


A. She's one of my son's girlfriends.


Q. And does she stay in your home?


A. She has spent the night there.


Q. And Jessica Hancock, where does she stay?


A. She lives in her house.


Q. Okay, when she comes to see you, does she come to visit you?


A. She comes to visit.



This is all the testimony in the record concerning appellee Hancock. We do not know who she
is, where she lives, her relationship with the other appellees (except she visits Betty Wall), or her
connection, if any, with the property in question. The return on the search warrant, introduced
into evidence, reflects that a Jessica Anne Hancock was arrested on the premises in question on
October 15, 1997, but the details and circumstances of the arrest were not shown. Neither the
search warrant nor the affidavit mentioned Hancock.

 At the suppression hearing, both parties focused on the locations searched and
whether these locations were within the five acres described in the search-warrant affidavit. Other
matters were generally ignored. As noted, merely because a person is on the premises searched
or charged with the crime of possession or the manufacture of a controlled substance does not
alone establish automatic standing to challenge the legality of a search. See Salvucci, 448 U.S.
at 91-92; Franklin, 913 S.W.2d at 240. (3) Reviewing de novo the implied finding of fact and
conclusion of law that Hancock had standing to complain of the search, we conclude that the trial
court erred as a matter of law. We sustain all of the State's first three points of error regarding
appellee Hancock as she did not sustain her burden and show that she had "standing" to complain.


William Henry Wall


 Much of that written about appellee Hancock is applicable to this appellee, but the
issue of his standing presents a more difficult question though the evidence at the suppression
hearing was meager. Wall filed a motion to suppress evidence advancing, inter alia, a Fourth
Amendment claim. He did not allege therein that he had "standing." William Wall did not testify
or offer affirmative evidence of his standing at the suppression hearing. His mother, appellee
Betty Floyd Wall, was called as a witness by her own attorney. She testified that she inherited
the 22.62-acre Wall property in question when her husband died some six years before the
hearing; that she lived alone on the premises and in the house described in detail in the search-warrant affidavit and marked as location number one on the exhibits introduced into evidence; that
she had two sons, Howard and William Wall; that when her sons "come to stay," they stay with
her "once in a while" in her house; and that the sons come to the property "a lot." She stressed,
however, that she was the only individual who lived on the property. Betty Wall made no
reference to her son William's presence on the day in question. The State, however, elicited from
Officer R. W. Carter, that William Wall was riding on a tractor near the entrance to the property
when the officers arrived to search the premises. What exact use was being made of the tractor,
if any, was not described.

 The return on the search warrant reflects that William Wall was arrested on the
premises on October 15, 1997, and it is clear that he was subsequently indicted for possession of
methamphetamine. Nothing in the record shows that any controlled substance was found on
Wall's person. As observed earlier, merely because a person is on the premises or has been
charged with crimes of possession does not mean that he may automatically challenge the legality
of the search. See Salvucci, 448 U.S. 83, 85, 91-92 (1980); Rakas, 439 U.S. at 147-49. Only
persons whose Fourth Amendments rights have been violated are entitled to benefit from the
exclusionary rule's protection. See Franklin, 913 S.W.2d at 240.

 When the State urged its premature challenge to standing at the commencement of
the suppression hearing, counsel for William Wall stated: "Your Honor, I'll be happy to state
and admit my client wasn't living anywhere around the property at that time and he had nothing
to do with the property. I'll be happy to go with that." The offer to stipulate was not accepted
by the State.

 In response to the State's points of error, appellee William Wall merely refers to
the testimony of Officer Carter without describing that testimony or making reference to the
record where the same may be found. There has been no compliance with the briefing rules. See
Tex. R. App. P. 38.1(h).

 Appellee Wall has attached to his appellate brief certified copies of an application
for letters of administration and an inventory and appraisal from the file of the estate of Henry C.
Wall in the County Court of Burnet County. This is an apparent attempt to show that appellee's
father died intestate and that appellee had a property interest in the 22.62-acre property involved. 
Assertions in an appellate briefs or attachments thereto that are not supported by the record will
not be accepted as fact. See Vanderbilt v. State, 629 S.W.2d 709, 713 (Tex. Crim. App. 1981);
Herrin v. State, 525 S.W.2d 27, 29 (Tex. Crim. App. 1975); Miranda v. State, 813 S.W.2d 724,
738 (Tex. App.--San Antonio 1991, pet. ref'd). The attachment cannot be considered.

 Most of the evidence relating to William Wall's standing came as a by-product of
testimony focusing on other issues. Under the evidence, and considering the relevant factors as
to standing, see Villarreal, 935 S.W.2d at 138, we review de novo the implied finding and
conclusion of law that William Wall had the standing to complain. We conclude that the trial
court erred as a matter of law. Appellee Wall did not sustain his burden of proof. We sustain
the State's first three points of error as to appellee William Henry Wall.

 In view of our disposition of the foregoing points of error concerning appellees
Hancock and William Wall, we need not reach the other points raised by the State concerning
these particular appellees.


Betty Floyd Wall


 In its first point of error in the Betty Floyd Wall case, the State claims that the trial
court erred in partially granting her motion to suppress evidence because the trial court found that
the search warrant and affidavit did not describe the "specific" five acres that were to be searched
with the 22.62-acre "Wall Ranch." In the second and third points of error, the State urges that
the trial court erred in finding that locations 2 and 3 on the property searched were not within the
appropriate five acres, a finding which implied that locations 2 and 3 were outside the scope of
the authorized search. The State contends that none of these findings were supported by the
record resulting in a misapplication of the law.

 The search warrant affidavit described the place to be searched as:


 A single story, single family dwelling consisting of a wood frame with a
red brick exterior with a white shingle roof . . . (instructions how to reach place
by roadways). . . . The suspected property is further described as the Betty Wall
residence next to the Wall's Trailer Park in Burnet County, Texas. The scope of
this warrant includes all of the property consisting of approximately five acres,
numerous outbuildings including but not limited to barns, camper trailers, motor
homes, work shops and vehicles on the curtilage.



 The written findings of fact and conclusions of law by the trial court reads in
pertinent part, as follows:


 The Wall Ranch consists of 22.62 acres of land out of the J.C. Hoffman
Survey No. 1009 and the C.O. Howard Survey No. 21 in Burnet County, Texas. 
A true and correct copy of the Warranty Deed which describes the Wall Ranch is
attached to these Findings of Fact and Conclusions of Law as Exhibit "C" and
incorporated herein for all purposes.


 There were six (6) premises that were searched during the execution of this
warrant. The locations of these premises are described as Location Nos. 1 through
6 on the return and Inventory attached.


 The only premises that was specifically described in the Warrant was
Location No. 1, Brick House-Betty Wall's residence. Location No. 2, a mobile
home, was a residence that was not described with any particularity nor was it
referenced as an outbuilding within the approximate 5 acres identified in the
warrant.


 The Warrant did not describe the specific 5 acres as stated in the Warrant,
that made up the curtilage that was to be searched within the 22.62 acre Wall
Ranch. The fence line around Betty Wall's residence, or Location No. 1, Brick
House-Betty Wall's residence, extended across the dirt road and included Location
Nos. 4, 5, and 6. The general acreage area of this curtilage was approximately 5
acres.


 Location Nos. 2 and 3 were outside of this approximate 5 acre curtilage of
the Brick House-Betty Wall's residence and, therefore, were not particularly
described in the Warrant.


 The Court is of the opinion that all of the items recovered during the
execution of this Warrant from Location Nos. 2 and 3 should be suppressed and
the government is not allowed to allude to or refer to any such items during the
trial of this cause. The Court is of the opinion that the items recovered from
Location Nos. 1, 4, 5, and 6 are described within the Warrant or are included in
the curtilage around the description of Location No. 1 and the Defendant's Motion
to Suppress with respect to these four (4) premises or locations is DENIED.



 The description in the affidavit of the size of the property to be searched as
"approximately five acres . . . on curtilage" became the main controversy of the suppression
hearing. From the four corners of the affidavit from which it must be interpreted, (4) several
possible interpretations appear including the one arrived at by the trial court in its findings. The
evidence further reflected that the property in question was a part of a 22.62-acre tract of land..
The affidavit did not specify that the property to be searched was part and parcel of a larger tract
of land. Moreover, the trial court was technically correct in its finding that the "warrant did not
describe the specific five acres. . . ." The warrant itself contained no property description at all. 
It did expressly incorporate the affidavit by reference. (5) We do not conclude that the trial court
meant to make a distinction between the search warrant and the affidavit upon which it was based. 
Moreover, the trial court did not hold the search warrant to be invalid because the place to be
searched had not been "particularly" described as required by the Fourth Amendment, U.S.
Const. Amend. IV, nor "as near as may be" as required by the Texas Constitution. Tex. Const.
art. I, § 9; see also Tex. Code Crim. Proc. Ann. arts. 1.06, 18.04(2) (West 1977). The trial
court, in effect, simply expressed its opinion in its findings, that the five acres, because it was a
part of a larger tract of land and was the curtilage of Betty Wall's residence, could have been
described with greater specificity. The State's first point of error in the Betty Wall case is without
merit and is overruled.

 In points of error two and three in this same case, the State complains of the trial
court's finding that locations 2 and 3 were not within the approximate five-acre premises to be
searched, implying that these locations were outside the scope of the search authorized. It argues
that the finding is not supported by the record and caused the trial court to misapply the law.

 Location 2 was one of the six locations or structures searched pursuant to the search
warrant. According to some of the testimony, it was a mobile home, the residence of Howard
Wall, but was not in use at the time of the search, and was separated from the Betty Wall
residence and curtilage by a fence. The trial court found that this mobile home residence was not
described with any particularity nor "referenced as an out building within the approximate five
acres" within the warrant and affidavit. Location 3 was a camper trailer which was also searched. 
It was located north of the Betty Wall residence and north of location 2 on the property. The
exact nature of the camper trailer is not clear from the record, (6) and the trial court found it was
"not particularly described in the warrant." The trial court found that "Location Nos. 2 and 3
were outside of this approximate 5-acre curtilage of the Brick House-Betty Wall's residence. . .
." The trial court's findings are supported by the record especially when Betty Wall's testimony
is considered concerning her residence, its curtilage, and the mostly enclosed area around her
dwelling. She estimated the area to be a little more than five acres which did not include locations
2 and 3 on the other side of a fence enclosing her house. Her testimony was in conflict with
Officer Carter's estimate that the area to which she referred was about two acres. In drafting the
search warrant affidavit, Carter related that he "guessestimated" the five acres he included; that
locations 2 and 3 were within that area; that he knew little about the size of an acre; and that
location 2 was a mobile home not listed in the affidavit but was included under "outbuildings." 
When controversy arose at the suppression hearing about the size of the area that could be legally
searched, Officer Carter asserted and assigned (without support in the record) 17 acres of the
22.62 Wall property to the Wall Trailer Park adjoining the Betty Wall residence. Outside the
trailer park, this then would leave 5.62 acres in the Wall property. Almost immediately, Carter
was shown a diagram drafted by NET (Narcotic Enforcement Team) and marked as Defendant's
exhibit 3 which showed an area marked "pasture" on the remaining Wall property. Carter agreed
that this area was not a part of the five acres described in the affidavit. Shortly thereafter, Carter
also agreed that three other areas of the Wall property, outside of the trailer park, were not within
the five acres in question. Carter stated that it was not "our intention" to search the area of the
property beyond a "wire fence" located north of location no. 3 (the camper trailer). (7) Any
inference that all of the Wall property outside the trailer park was within the scope of the
authorized search was dispelled.

 Moreover, the State in its argument to the trial court stated: "Curtilage was
explicitly used as a term to describe the area subject to the search in the affidavit." The term
"curtilage" has been defined as "the area around the home to which the activity of home life
extends." Oliver v. United States, 466 U.S. 170, 182 n.12 (1984); see also White v. State, 890
S.W.2d 131, 134 (Tex. App.--Texarkana 1994, pet. ref'd); Rosalez v. State, 875 S.W.2d 705, 713
(Tex. App.--Dallas 1993, pet. ref'd). For other definitions of curtilage, see Cantu v. State, 577
S.W.2d 107, 109 (Tex. Crim. App. 1977); Worth v. State, 12 S.W.2d 582, 584 (Tex. Crim. App.
1929). Fencing configurations are important factors in defining curtilage of a home but are not
always controlling. See United States v. Dunn, 480 U.S. 294, 301 n.14 (1987). The curtilage
is entitled to the same Fourth Amendment protection from unreasonable searches that is afforded
the home itself. See Oliver, 466 U.S. at 180; Rosalez, 875 S.W.2d at 713; see also Moss v. State,
878 S.W.2d 632, 643 (Tex. App.--San Antonio 1994, pet. ref'd).

 In the suppression hearing, Betty Wall drew with red lines the extent of her
dwelling and its curtilage which did not include locations 2 (motor home-separate residence not
in use) and 3 (camper trailer) which were on the other side of the fence from the curtilage. In
rendering its findings, it is obvious that the trial court accepted Mrs. Wall's testimony. In a
suppression hearing, the trial court is the trier of fact. See Romero, 800 S.W.2d at 543. The trial
court may accept or reject any or all of a witness's testimony. See Alvarado, 853 S.W.2d at 23. 
It resolves all conflicts in the testimony. See Hawkins, 853 S.W.2d at 600. We must afford
almost total deference to the trial court's findings of historical facts, especially when the findings
are based on the credibility and demeanor of the witnesses. See Guzman, 855 S.W.2d at 89. The
trial court did not abuse its discretion nor, under the facts, did it misapply the law. See id.

 The State on appeal now attempts to raise the issue of the "good faith" of the
officers, citing article 38.23(a). Tex. Code Crim. Proc. Ann. art. 38.23(a) (West Supp. 2000). 
It is too late to raise the issue. See Mercado, 972 S.W.2d at 78. Appellant's first, second, and
third points of error in the Betty Floyd Wall case are overruled.

 The trial court's order of suppression in cause no. 03-98-00697-CR (Betty Floyd
Wall case) is affirmed. In cause no. 03-98-00672-CR (William Henry Wall case) and cause no.
03-98-00634-CR (Jessica Anne Hancock case), the orders partially granting the motions to
suppress are reversed. All three causes are remanded to the trial court.



 

 John F. Onion, Jr., Justice

Before Chief Justice Aboussie, Justices Patterson and Onion*

Reversed and Remanded in Cause Nos. 03-98-00634-CR & 03-98-00672-CR

Affirmed as to Cause No. 03-98-00697-CR


Filed: January 27, 2000

Do Not Publish



* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. In determining whether an expectation of privacy is viewed as reasonable by "society,"
the proper focus, under the Fourth Amendment, is upon American society as a whole, rather than
a particular state or other geographical subdivision. See State v. Hardy, 963 S.W.2d 516, 523
(Tex. Crim. App. 1997).
2. In State v. Brady, 763 S.W.2d 38, 42 (Tex. App.--Corpus Christi 1988, no pet.), the
issue of standing was sua sponte considered on appeal even though the State did not contest the
issue before the trial court or on appeal.
3. A "casual visitor" invited into a home for a presumably brief stay would lack the
relationship to the premises required to give rise to standing. See Rakas, 439 U.S. at 142; 40
George E. Dix & Robert O. Dawson, Criminal Practice and Procedure, § 4.53 at 153 (Texas
Practice 1995).
4. See Jones v. State, 833 S.W.2d 118, 123 (Tex. Crim. App. 1992); Lagrone v. State, 742
S.W.2d 659, 661 (Tex. Crim. App. 1987).
5. A search warrant which incorporates by reference the affidavit where the property to be
searched is described with particularity is sufficient to make the description of the place to be
searched a part of the warrant itself. See Phenix v. State, 488 S.W.2d 759, 764 (Tex. Crim. App.
1972); Rios v. State, 901 S.W.2d 704, 706 (Tex. App.--San Antonio 1995, no pet.). The warrant
and attached affidavit should be considered together as defining the place to be searched, but the
description in the affidavit controls over the language of the warrant itself. See State v. Saldivar,
798 S.W.2d 872, 873 (Tex. App--Austin 1990, pet. ref'd); see also Riojas v. State, 530 S.W.2d
298, 303 (Tex. Crim. App. 1975); State v. Tipton, 941 S.W.2d 152, 155 (Tex. App.--Corpus
Christi 1996, pet. ref'd).
6. Officer R. W. Carter described location 3 as "a camper trailer or actually it was a
camper off of a, like you would put on the back of a pickup." Later, he described it as "a camper
shell like that fits on the back of a pickup, only it was out there sitting on a stand or type deal." 
The return and inventory as to location 3 in evidence refers to items found therein as on or near
a refrigerator, a couch, a sink, a stove, a table, an inside closet, and numerous cabinets.
7. This "wire fence" is not to be confused with the fence around the dwelling earlier
described.



 on the credibility and demeanor of the witnesses. See Guzman, 855 S.W.2d at 89. The
trial court did not abuse its discretion nor, under the facts, did it misapply the law. See id.

 The State on appeal now attempts to raise the issue of the "good faith" of the
officers, citing article 38.23(a). Tex. Code Crim. Proc. Ann. art. 38.23(a) (West Supp. 2000). 
It is too late to raise the issue. See Mercado, 972 S.W.2d at 78. Appellant's first, second, and
third points of error in the Betty Floyd Wall case are overruled.

 The trial court's order of suppression in cause no. 03-98-00697-CR (Betty Floyd
Wall case) is affirmed. In cause no. 03-98-00672-CR (William Henry Wall case) and cause no.
03-98-00634-CR (Jessica Anne Hancock case), the orders partially granting the motions to
suppress are reversed. All three causes are remanded to the trial court.



 

 John F. Onion, Jr., Justice

Before Chief Justice Aboussie, Justices Patterson and Onion*

Reversed and Remanded in Cause Nos. 03-98-00634-CR & 03-98-00672-CR

Affirmed as to Cause No. 03-98-00697-CR


Filed: January 27, 2000

Do Not Publish



* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. In determining whether an expectation of privacy is viewed as reasonable by "society,"
the proper focus, under the Fourth Amendment, is upon American society as a whole, rather than
a particular state or other geographical subdivision. See State v. Hardy, 963 S.W.2d 516, 523
(Tex. Crim. App. 1997).
2. In State v. Brady, 763 S.W.2d 38, 42 (Tex. App.--Corpus Christi 1988, no pet.), the
issue of standing was sua sponte considered on appeal even though the State did not contest the
issue before the trial court or on appeal.
3. A "casual visitor" invited into a home for a presumably brief stay would lack the
relationship to the premises required to give rise to standing. See Rakas, 439 U.S. at 142; 40
Geor