NO. 12-02-00227-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


GUELAND CHOICE,
§
 APPEAL FROM THE 241ST

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 SMITH COUNTY, TEXAS

 

MEMORANDUM OPINION


 Gueland Choice ("Appellant") appeals his conviction for possession of a controlled
substance, cocaine, in an amount of four grams or more but less than 200 grams. Appellant presents
four issues on appeal. We affirm.


Background Appellant was arrested and charged by indictment with possession of a controlled substance,
cocaine, in an amount of four grams or more but less than 200 grams, including any adulterants and
dilutants. (1) Appellant pleaded not guilty and elected a trial by jury. Before trial, Appellant filed a
motion to suppress (1) any and all tangible evidence seized by law enforcement officers in
connection with Appellant's detention and arrest, (2) the arrest of Appellant and any and all evidence
relating to the arrest and any testimony of law enforcement officers concerning Appellant's actions
while in detention or under arrest, (3) all written and oral statements made by Appellant to any law
enforcement officer or others and any testimony of law enforcement officers regarding Appellant's
statements, and (4) any other matters that the trial court finds should be suppressed. The trial court
found that Appellant had no legitimate privacy interest in the mobile home that was searched and,
therefore, lacked standing to contest the search. The trial court denied the motion to suppress as to
the mobile home, but granted the motion as to automobiles on the premises.

 At trial, Constable Dennis Taylor ("Taylor") of Smith County, Texas testified that he
executed a search warrant on a mobile home in north Smith County on October 23, 2001. Taylor
testified that an investigation involving the mobile home had been ongoing, and Taylor had
successfully worked an informant on the premises. After Taylor had obtained sufficient information
from the informant which he believed established probable cause, he obtained a search warrant to
enter the mobile home and search for narcotics. 

 The next day, accompanied by Deputies Tommy Goodman ("Goodman") and Ron Van Ness
("Van Ness"), Taylor executed the search warrant. When they arrived, Taylor sent the deputies to
the back of the mobile home, and he knocked on the front door. When someone asked who was at
the door, Taylor identified himself by name and as a peace officer. Taylor also testified that he
believed that he told the person he had a paper to give him and to come to the door. Taylor heard
people in the mobile home running and talking. However, he could not hear what was being said. 
He continued knocking on the door. After a few minutes, Appellant opened the door slightly and
asked what Taylor needed, but would not let Taylor in. Taylor testified that Appellant said to give
him the paper, but Taylor replied that he needed to enter the mobile home. However, Appellant
refused to let Taylor in, and closed the door. Taylor then pushed the door open, but Appellant
attempted to keep him out. They struggled for about thirty seconds. Taylor then pulled his weapon,
backed Appellant into the house, sat him on the couch, and told Appellant that he had a search
warrant. Two unidentified occupants ran down the hall of the mobile home.

 Goodman came in and stayed with Appellant while Taylor checked the other rooms. Taylor
found Casey Mosley ("Mosley") in a bedroom. Taylor told Mosley he had a search warrant, and that
he needed to come to the front room. Mosley complied, and was seated on the couch beside
Appellant. Taylor found Levi Thomas Ponder ("Ponder") in the bathroom, and escorted him to the
living room. Goodman and Van Ness searched the mobile home while Taylor catalogued items
recovered by the deputies. The deputies found powder cocaine hidden under the tank lid of the
commode, rock cocaine in the refrigerator and bedroom, marijuana in two bedrooms, and pills in a
bedroom. All of the trash cans contained large amounts of discarded tobacco, indicating someone
had made "blunts." (2) A set of blue electronic scales designed to make very exact, small
measurements was found in plain view on the kitchen table. Another set of electronic scales was
found in a bedroom. Cell phones and a marijuana pipe were also recovered at the mobile home. 
Additionally, the officers discovered empty baggies, another pair of scales, a razor blade, and a
straw. The officers also found mail addressed to eight to ten people, and medicine bottles with
prescriptions in the names of five or six people. Appellant's name was not on any of the medicine
bottles, mail, or any documents found in the mobile home. 

 In the course of his investigation, Taylor discovered that the mobile home was leased to a
Derrick Jenkins ("Jenkins"), who was not in the mobile home at the time of the search. Taylor
testified that the mobile home was a "dope house," and no one lived there. Appellant had $619 in
cash and Mosley had $1,411. Ponder had only $60. No drugs were found on Appellant. Taylor did
not know if Appellant was under the influence of drugs because Appellant would not talk to the
officers. Taylor did not find any indication that Appellant had been in other rooms of the mobile
home. No attempt was made to determine if Appellant's fingerprints were on any of the plastic bags
or on the tank lid of the commode where cocaine was discovered. 

 Karen Ream ("Ream"), a criminalist in the drug section for the Department of Public Safety
("DPS") Crime Lab in Tyler, Texas, testified that she analyzed items recovered in this case. The
pills recovered at the mobile home contained controlled substances. Ream determined that the
officers recovered a total of 217.73 grams of marijuana. According to her analysis, the powdery
substance found under the commode tank lid was .56 gram of cocaine. Further, she determined that
there was a total of 24.14 grams of crack cocaine. 

 Ponder testified that he was arrested with Appellant at the mobile home. He testified that
earlier on October 23, 2001, he took Mosley to Jacksonville where Mosley bought marijuana. Later,
in Tyler, Mosley called Appellant from Ponder's vehicle, and Ponder heard Mosley tell Appellant
where to meet. From this conversation, Ponder believed Appellant was coming to the mobile home
to meet Mosley. 

 Ponder testified that Mosley asked him to give him a ride, and directed Ponder to the mobile
home. At the time of the occurrence, Ponder believed that the mobile home was Mosley's home.
However, at the time of trial, Ponder no longer believed that this was Mosley's home. Although he
had been there once before, Ponder had never been inside the mobile home. Mosley told Ponder to
come inside and wait for a few minutes. No one was in the mobile home when they got there. 
Mosley put the marijuana on the kitchen table. About five minutes later, Appellant arrived at the
mobile home alone. Ponder noticed that Mosley and Appellant appeared to know each other "pretty
well." When Appellant walked in, he did not inquire if anyone else was present. Appellant sat down
at the kitchen table and Mosley stood beside him. Ponder remained on the couch watching
television. Appellant appeared comfortable and did not appear nervous. Although Appellant and
Mosley were talking, Ponder could not hear what they were saying. Ponder testified that Appellant
did not seem shocked that there was one-half pound of marijuana on the kitchen table. Ponder went
to the kitchen table. He did not recall what Mosley said. He recalls that Mosley showed Appellant
a small bag of cocaine, but was unsure how many rocks of cocaine Mosley had. Ponder did not see
Appellant's reaction. Ponder testified that he was "pretty sure" that Mosley had the cocaine first and
stated to Appellant, "I got some work." According to Ponder, this meant that Mosley had some
drugs. Ponder does not believe Appellant responded or appeared shocked. Further, Ponder did not
see Appellant with any cocaine. Other than the marijuana and cocaine, Ponder did not see any other
narcotics at the mobile home. Ponder testified that Mosley opened the set of scales that were beside
the marijuana on the kitchen table and placed the cocaine on the scales in front of Appellant. Ponder
did not hear either of them say anything, nor was any money displayed. Ponder never heard an offer
to buy or sell any type of drugs between Appellant and Mosley. The cocaine was on the scales for
less than a minute, and Mosley removed it immediately prior to Taylor's knock on the door. He did
not see anything else weighed on these scales. 

 According to Ponder, Taylor knocked on the door not more than ten minutes after Appellant
arrived. Mosley told Appellant to answer the door and "don't let him in." At that time, there was
approximately one-half pound of marijuana on the kitchen table where Appellant had been sitting.
Ponder went to the bathroom because he was scared, and Mosley went to the back bedroom.

 The jury found Appellant guilty of possession of a controlled substance as charged in the
indictment. Appellant elected to have punishment assessed by the court and was sentenced by the
judge to ten years of imprisonment. (3)


Motion to Suppress

 In his third and fourth issues, Appellant argues that the trial court erred in overruling his
motion to suppress in violation of his rights under the Fourth Amendment to the United States
Constitution and Article I, Section 9 of the Texas Constitution. We analyze the federal and state
issues separately.

Standard of Review

 In reviewing a trial court's ruling on a motion to suppress, "the trial court is the sole trier of
fact and judge of the credibility of the witnesses and the weight to be given their testimony." State
v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). The appellate court should give "almost total
deference to a trial court's determination of the historical facts that the record supports especially
when the trial court's fact findings are based on an evaluation of credibility and demeanor." 
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). A similar deference should be
accorded the trial court's rulings on "application of law to fact questions," also known as "mixed
questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of
credibility and demeanor. Id. Any "mixed questions of law and fact" which do not rely upon an
assessment of credibility and demeanor should be reviewed de novo. Id.

 A de novo review is proper when principal facts are not denied and nothing implies the trial
court did not accept that testimony because the trial court's ruling was consistent with the
uncontroverted testimony. Ross, 32 S.W.3d at 857-58. Taylor was the only person to testify at the
suppression hearing and the trial court's ruling conformed to the officer's testimony. Accordingly,
we give almost total deference to the trial court's resolution of historical facts and review the
application of the law of search and seizure de novo. See Carmouche v. State, 10 S.W.3d 323, 327
(Tex. Crim. App. 2000). If a trial court does not file findings of fact, we assume that the trial court
made implicit findings that support the ruling, so long as those implicit findings are supported by
the record. Corbin v. State, 85 S.W.3d 272, 275-76 (Tex. Crim. App. 2002) (citing Ross, 32 S.W.3d
at 855). Here, the trial court did not make findings of fact, and we therefore review the evidence in
the light most favorable to the trial court's ruling. See Carmouche, 10 S.W.3d at 327-28.

Fourth Amendment Challenge

 In his third issue, Appellant complains that the trial court erred in failing to suppress the
evidence found in the mobile home because the warrant was insufficient to comply with
requirements of the Fourth Amendment to the United States Constitution. "Probable cause under
the Fourth Amendment exists where the facts and circumstances within the affiant's knowledge, and
of which he has reasonably trustworthy information, are sufficient unto themselves to warrant a man
of reasonable caution to believe that an offense has been or is being committed." Berger v. New
York, 388 U.S. 41, 55, 87 S. Ct. 1873, 1881, 18 L. Ed. 2d 1040 (1967). The United States Supreme
Court stated that a probable cause determination shall be made from a totality-of-the-circumstances
analysis. Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527 (1983). The
issuing magistrate must make a practical, commonsense decision as to whether, given all the
particulars submitted in the affidavit including the veracity and basis of knowledge of the persons
providing hearsay information, there is a fair probability that contraband or evidence will be found
in a particular place. Id., 462 U.S. at 238, 103 S. Ct. at 2332. In its review, an appellate court should
simply ensure that a magistrate issuing an affidavit had a substantial basis for concluding that
probable cause existed. Id., 462 U.S. at 238-39, 103 S. Ct. at 2332. Wholly conclusory statements
do not meet this requisite. Id., 462 U.S. at 239, 103 S. Ct. at 2332. In other words, the magistrate's
action must not merely ratify the bare conclusions of others. Id., 462 U.S. at 239, 103 S. Ct. at 2333.

 Appellant contends that the affidavit presented by Taylor was a "bare bones" affidavit and,
thus, inadequate to meet the requirements of the Fourth Amendment. However, Appellant's
argument is conclusory and fails to describe any justification or reason for a determination that the
affidavit was a "bare bones" affidavit. As such, we will neither surmise nor devise our own
conclusions absent some cogent argument on Appellant's behalf that the magistrate lacked a
substantial basis for concluding that probable cause existed or that the affidavit merely ratified the
conclusions of others. See id., 462 U.S. at 239, 103 S. Ct. at 2332-333. Therefore, Appellant failed
to show that the warrant was insufficient to comply with requirements of the Fourth Amendment. 

 Further, Appellant contends that he had standing under the United States Constitution to
attack the search. However, his standing argument is contained in a footnote and is conclusory.
Appellant argues that a person exercising control over property with the consent of the owner has
a legitimate expectation of privacy in the property. See Rakas v. Illinois, 439 U.S. 128, 141-49, 99
S. Ct. 421, 429-33, 58 L. Ed. 2d 387 (1978); Jones v. United States, 362 U.S. 257, 262-65, 80 S. Ct.
725, 731-34, 4 L. Ed. 2d 697 (1960). However, Appellant fails to describe any justification or reason
for a determination that he exercised control over the premises with the owner's consent. Therefore,
Appellant failed to show that he had a legitimate expectation of privacy in the property searched and,
thus, standing to contest the search. Accordingly, Appellant's third issue is overruled.

Texas Constitution Challenge

 In his fourth issue, Appellant contends that he had standing under the Texas Constitution to
contest the search. Further, Appellant argues that the trial court erred in failing to suppress evidence
found in the search of the mobile home because the warrant did not comply with the requirements
of Article I, Section 9 of the Texas Constitution. The State contends that Appellant did not show
evidence of a property interest or right in the premises searched and, thus, standing to contest the
search. We will consider Appellant's standing complaint first. 

 In Heitman v. State, 815 S.W.2d 681, 690 (Tex. Crim. App. 1991), the court of criminal
appeals stated that it had the authority to interpret Article I, Section 9 on independent state grounds
after concluding that the Texas Constitution was not intended to mirror that of the United States
Constitution. In Johnson v. State, 864 S.W.2d 708, 718 (Tex. App.- Dallas 1995), aff'd, 912
S.W.2d 227 (Tex. Crim. App. 1995), the Dallas Court of Appeals recognized that Heitman provides
authority for granting defendants greater rights under the Texas Constitution than afforded by the
Supreme Court's interpretation of the United States Constitution. However, the court also noted that
"[b]ecause we can do so, however, does not mean we should do so. State precedent existing before
the Fourth Amendment was made applicable to the states does not support granting defendants
greater rights under article one, section nine than they currently enjoy under the Fourth Amendment."
Id. (emphasis in original). The court of criminal appeals affirmed, quoting the above statement
approvingly, and also observed as follows: 


 It is not unreasonable to conclude from these facts that the framers of the Texas Constitution chose
to draft Art. I, § 9 to protect Texas citizens from unreasonable searches and seizures by the state in the
same way they were protected from unreasonable searches and seizures by the federal government. 
If they had intended to grant to citizens greater protection from state actions than they enjoyed from
federal actions, then they could have drafted Article I, § 9 at that time to reflect that intent.



Johnson v. State, 912 S.W.2d 227, 233-34 (Tex. Crim. App. 1995). In Crittenden v. State, 899
S.W.2d 668, 673 (Tex. Crim. App. 1995), the court of criminal appeals again addressed
interpretation of the Fourth Amendment and Article I, Section 9, in light of their similarity, and
noted that


 [i]ndeed, we would abuse our prerogative to construe even like provisions of the state and federal
constitutions differently [citation omitted], and stretch judicial credibility to the breaking point, were
we somehow to hold that what "makes more sense" for purposes of the Fourth Amendment does not
also "make more sense" under our own state constitutional analog.



Id. (footnotes omitted). Therefore, we interpret Article I, Section 9 in a manner consistent with the
Fourth Amendment.

 The purpose of both the Fourth Amendment and Article I, Section 9 "is to safeguard an
individual's legitimate expectation of privacy from unreasonable governmental intrusions."
Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996) (quoting Richardson, 865 S.W.2d
at 948). An accused has standing, under both constitutional provisions, to contest a search only if
he had a legitimate expectation of privacy in the place searched. Rakas, 439 U.S. at 143, 99 S. Ct.
at 430; Villarreal, 935 S.W.2d at 138. The accused has the burden of proving facts establishing a
legitimate expectation of privacy. Calloway v. State, 743 S.W.2d 645, 650 (Tex. Crim. App. 1988). 
The accused may carry his burden by proving that (a) by his conduct, he exhibited an actual
subjective expectation of privacy, i.e., a genuine intention to preserve something as private; and (b)
circumstances existed under which society was prepared to recognize his subjective expectation as
objectively reasonable. Smith, 442 U.S. at 740, 99 S. Ct. at 2580; Granados v. State, 85 S.W.3d
217, 223 (Tex. Crim. App. 2002); Villarreal, 935 S.W.2d at 138.

 The following factors are relevant in determining whether a claim of privacy is objectively
reasonable: (1) whether the accused had a property or possessory interest in the place searched; (2)
whether he was legitimately in the place searched; (3) whether he had complete dominion and
control and the right to exclude others; (4) whether, prior to the intrusion, he took normal precautions
customarily taken by those seeking privacy; (5) whether he put the place to some private use; and
(6) whether his claim of privacy is consistent with historical notions of privacy. Granados, 85
S.W.3d at 223; Villarreal, 935 S.W.2d at 138. As the court wrote, "[t]his list of factors is not
exhaustive, however, and none is dispositive of a particular assertion of privacy; rather, we examine
the circumstances surrounding the search in their totality." Granados, 85 S.W.3d at 223. Moreover,
neither an accused's presence on the premises nor the fact that he was charged with possession of
a controlled substance establishes automatic standing to challenge the legality of a search. (4) United
States v. Salvucci, 448 U.S. 83, 85, 91-92, 100 S. Ct. 2647, 2549, 2552-553, 65 L. Ed. 2d 619
(1980); Franklin v. State, 913 S.W.2d 234, 240 (Tex. App.-Beaumont 1995, pet. ref'd); Puente v.
State, 888 S.W.2d 521, 525 (Tex. App.-San Antonio 1994, no pet.).

 During the hearing on Appellant's motion, Taylor testified that Appellant was not one of the
three men identified in his affidavit as being on the premises the night before the warrant was
obtained. However, he admitted that he does not know if Appellant was on the premises that night.
In fact, Taylor testified that he had no evidence that Appellant was in the mobile home overnight,
that Appellant was in the mobile home frequently, or that Appellant had been in the mobile home
more than ten minutes prior to the search. Testimony during the hearing showed that Appellant's
name was not on the lease nor was he the owner of the mobile home. Further, Appellant's name was
not on any of the mail or documents recovered on the premises. Moreover, Taylor testified he found
nothing on the premises that showed Appellant had any possessory interest in the mobile home. As
such, there is no evidence that Appellant had complete dominion and control over the mobile home,
or the right to exclude others. See Granados, 85 S.W.3d at 223; Villarreal, 935 S.W.2d at 139
(analysis of factors adduced at suppression hearing "grounded on the totality of the circumstances
established by the evidence"). Taylor admitted that he had no reason to believe Appellant was not
on the premises lawfully. Nonetheless, there is no testimony that Appellant had permission of either
the owner or lessee of the mobile home to be on the premises. As the court of criminal appeals has
noted, the general rule is that the burden is upon the one claiming the expectation of privacy to 
establish that he had permission to be on the premises on the occasion of the search at issue. 
Granados, 85 S.W.3d at 225. Because Appellant did not establish that he had permission to be on
the premises, nor did he establish any of the other factors the Granados court noted, his claim of an
expectation of privacy fails.

 Further, the record shows that Appellant was in the mobile home approximately ten minutes
before the search occurred and attempted to prevent Taylor from executing the search warrant by
barring the door of the mobile home. According to his counsel, Appellant's action was a normal
precaution customarily taken by those seeking privacy. However, counsel for the State asserted that
shutting the door on a police officer attempting to execute a search warrant does not show a right to
exclude that society is prepared to recognize. We agree. Appellant's action is not consistent with
those factors that society is willing to sanction as an expectation of privacy of an accused who was
on the premises in these circumstances. See Villarreal, 935 S.W.2d at 139. Moreover, Appellant's
claim of taking normal precautions of someone seeking privacy was merely argument of counsel,
not evidence presented at the hearing. Appellant has the burden of proving facts establishing a
legitimate expectation of privacy in the place searched. See Calloway, 743 S.W.2d at 650. Because
Appellant has failed to prove that his conduct evidenced an actual subjective expectation of privacy
and that society was prepared to recognize his subjective expectation as objectively reasonable, he
has failed to carry his burden of proof establishing a legitimate expectation of privacy in the place
searched. Therefore, Appellant has not shown that he had standing to contest the search of the
mobile home. Having determined Appellant lacked standing to contest the search, it is unnecessary
for us to address Appellant's argument that the warrant did not comply with requirements of Article
I, Section 9 of the Texas Constitution. See Tex. R. App. P. 47.1. Accordingly, Appellant's fourth
issue is overruled.


Evidentiary Sufficiency

 In his first and second issues, Appellant argues that the evidence fails to show he exercised
care, custody, control, or management of the crack cocaine and is, therefore, legally and factually
insufficient to support his conviction. The State disagrees and contends that there was sufficient
circumstantial evidence that Appellant exercised control over the contraband found in the mobile
home for a rational jury to determine that he was guilty of the offense. 

Standard of Review

 "Legal sufficiency is the constitutional minimum required by the Due Process Clause of the
Fourteenth Amendment to sustain a criminal conviction." Escobedo v. State, 6 S.W.3d 1, 6 (Tex.
App.-San Antonio 1999, no pet.) (citing Jackson v. Virginia, 443 U.S. 307, 315-16, 99 S. Ct. 2781,
2786-788, 61 L. Ed. 2d 560 (1979)). The standard of review is whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt. Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789; LaCour v. State, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000). The
evidence is viewed in the light most favorable to the verdict. Jackson, 443 U.S. at 319, 99 S. Ct.
at 2789; LaCour, 8 S.W.3d at 671. The conviction will be sustained "unless it is found to be
irrational or unsupported by more than a 'mere modicum' of the evidence." Moreno v. State, 755
S.W.2d 866, 867 (Tex. Crim. App. 1988). The jury is the sole judge of the credibility of witnesses
and of the weight to be given their testimony. Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim.
App. 1994). Any reconciliation of conflicts and contradictions in the evidence is entirely within the
jury's domain. Losada v. State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). If a reviewing court
finds the evidence legally insufficient to support a conviction, the result is an acquittal. Tibbs v.
Florida, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-218, 72 L. Ed. 2d 652 (1982). 

 If the reviewing court determines that the evidence is legally sufficient to support the verdict,
the court then proceeds with a review of the factual sufficiency of the evidence. Clewis v. State, 922
S.W.2d 126, 133 (Tex. Crim. App. 1996). In reviewing the factual sufficiency of the evidence, a
court examines all the evidence "without the prism of 'in the light most favorable to the prosecution'
and sets aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to
be clearly wrong and unjust." Id. at 134. The court determines whether a neutral review of all the
evidence, both for and against the verdict, establishes that the proof of guilt is so manifestly weak
as to undermine faith in the jury's resolution, or the proof of guilt, although sufficient if taken alone,
is greatly offset by conflicting proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

 The reviewing court should exercise proper deference toward the factfinder's conclusions,
and should avoid substituting its judgment for that of the fact finder absent facts which establish that
the evidence is factually insufficient so as to be wrong or manifestly unjust, or against the great
weight and preponderance of the available evidence. Id. at 7. Any examination of the evidence
should not substantially infringe upon the fact finder's role as the exclusive judge of the weight and
credibility given to witness testimony. Id.; Clewis, 922 S.W.2d at 133. Wrong and unjust verdicts
include ones in which the verdict is "manifestly unjust," "shocks the conscience," or "clearly
demonstrates bias." Santellan v. State, 939 S.W.2d 155, 165 (Tex. Crim. App. 1997). The
reviewing court examines all of the evidence in the record pertaining to the factual sufficiency
challenge, not just evidence confirming the verdict. Id. at 164. Where supported by the record, a
reviewing court defers to a jury's determination on any conflicting evidence that depends upon an
evaluation of the demeanor and credibility of the witnesses due to the jury's opportunity to witness
that testimony, as opposed to a reviewing court's limitation to the cold transcript of the witnesses'
testimony. Johnson, 23 S.W.3d at 8; Van Zandt v. State, 932 S.W.2d 88, 96 (Tex. App.-El Paso
1996, pet. ref'd).

 In a criminal conviction, sufficiency of the evidence is determined by the elements of the
crime as defined by the hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997). The correct charge "would be one that accurately sets out the law, is
authorized by the indictment, does not unnecessarily increase the State's burden of proof or
unnecessarily restrict the State's theories of liability, and adequately describes the particular offense
for which the defendant was tried." Id.

Elements of the Offense

 In this case, Appellant was convicted for possession of a controlled substance, cocaine, in
the amount of four grams or more, but less than 200 grams. The elements of the offense are that (1)
a person (2) knowingly or intentionally (3) possesses (4) a controlled substance listed in Penalty
Group 1, which includes cocaine. Tex. Health & Safety Code Ann. § 481.102 (3)(D) (Vernon
Supp. 2004); Tex. Health & Safety Code Ann. § 481.115(a) (Vernon 2003). To support a
conviction for possession of a controlled substance, the State must prove (1) that the accused
exercised care, control, or custody over the substance, and (2) that the accused was conscious of his
connection with the substance and knew what it was. Brown v. State, 911 S.W.2d 744, 747 (Tex.
Crim. App. 1995); Roberts v. State, 963 S.W.2d 894, 898 (Tex. App.-Texarkana 1998, no pet.);
Ortiz v. State, 930 S.W.2d 849, 853 (Tex. App.-Tyler 1996, no pet.). The evidence may be direct
or circumstantial. Brown, 911 S.W.2d at 747; Roberts, 963 S.W.2d at 898. Regardless, the
evidence must establish that "the accused's connection with the drug was more than just fortuitous." 
Brown, 911 S.W.2d at 747; Roberts, 963 S.W.2d at 898. 

 The State may prove that a person "knowingly" possessed a controlled substance by
introducing evidence that positively links the accused to the contraband. Brown, 911 S.W.2d at 747. 
The nexus need not eliminate every other "outstanding reasonable hypothesis" except the accused's
guilt. Id. at 748. If the accused is not in sole control of the location where the drugs are discovered,
additional links must be revealed between the accused and the controlled substances. Villegas v.
State, 871 S.W.2d 894, 896 (Tex. App.-Houston [1st Dist.] 1994, pet. ref'd) (citing Cude v. State,
716 S.W.2d 46, 47 (Tex. Crim. App. 1986)). An "affirmative link" is not a legal rule, but simply
a shorthand method of proving that the accused possessed the contraband knowingly or intentionally. 
Roberson v. State, 80 S.W.3d 730, 735 (Tex. App.-Houston [1st Dist.] 2002, no pet.). The quantity
of factors is less decisive than the reasonable impact of the factors in substantiating the elements of
the offense. Gilbert v. State, 874 S.W.2d 290, 298 (Tex. App.-Houston [1st Dist.] 1994, pet. ref'd);
see also Wallace v. State, 932 S.W.2d 519, 524 (Tex. App.-Tyler 1995, pet. ref'd).

 Factors which may be considered in developing an affirmative link between the accused and
the contraband include: (1) whether the accused was present when the search warrant was executed;
(2) whether there was contraband in plain view; (3) whether the accused was in proximity to the
contraband; (4) whether the accused had access to the narcotic; (5) whether the accused was under
the influence of narcotics when arrested; (6) whether the accused possessed other contraband or
narcotics when arrested; (7) whether there was an odor of contraband; (8) whether there was
contraband or drug paraphernalia present; (9) whether the accused owned or had the right to possess
the place where drugs were found; (10) whether the location of the contraband was enclosed; (11)
whether the accused was driving the vehicle where contraband was discovered; (12) whether the
amount of contraband was large enough to indicate the accused knew of its existence; (13) whether
the conduct of the accused indicated a consciousness of guilt; (14) whether the accused had a special
connection to the contraband; and (15) whether there was a relationship between the location of the
contraband and the accused's personal belongings. Roberson, 80 S.W.3d at 735 n.2; Roberts, 963
S.W.2d at 898; Kyte v. State, 944 S.W.2d 29, 31 (Tex. App.-Texarkana 1997, no pet); Villegas, 871
S.W.2d at 896-97.

Analysis

 According to Ponder, Appellant and Mosley arranged to meet at the mobile home. Appellant
entered the mobile home and sat at the kitchen table on which one-half pound of marijuana and a set
of scales were in plain view. Ponder testified that Appellant appeared comfortable, knew Mosley,
and began a conversation with Mosley. Mosley told Appellant that he had "some work," which
meant he had drugs. From this statement, it can be inferred that Mosley meant drugs to be sold. 
Mosley displayed a bag of cocaine and weighed it on the scales in front of Appellant. At no time did
Appellant appear shocked. Further, Appellant had a significant amount of cash. Taylor recovered
pills containing controlled substances, marijuana, and cocaine at the mobile home. Further, drug
paraphernalia was discovered including scales, a razor blade, and a straw. Baggies and cell phones
were recovered, and Taylor stated those items were commonly used in drug trafficking. Appellant
had access to the narcotics, contraband and drug paraphernalia were in plain view on the table in
front of him, an odor of marijuana was present, and the amount of contraband was large enough to
indicate that Appellant knew of its existence. When Taylor knocked on the door, Appellant opened
the door. Before Taylor drew his weapon, Appellant closed the door and attempted to bar Taylor
from entering the mobile home. From his conduct, Appellant indicated a consciousness of guilt that
he knew contraband was present. From this testimony, a jury could have concluded that Appellant
knew that the substances were contraband and that he was in the course of buying it. These
"affirmative links" between Appellant and the contraband establish that he knowingly and
intentionally possessed the substances. Therefore, viewing the evidence in the light most favorable
to the jury's verdict, we conclude that a rational trier of fact could have found the elements of
possession of a controlled substance beyond a reasonable doubt. Accordingly, Appellant's first issue
is overruled.

 Having determined that the evidence is legally sufficient to support the verdict, we address
factual sufficiency. We must conduct a neutral review of all the evidence in our evaluation of factual
sufficiency. Johnson, 23 S.W.3d at 11. In conducting our review, we note that Appellant's name
was not on any of the medicine bottles, mail, or documents found at the mobile home. Appellant
did not own or lease the premises. Further, no drugs were found on Appellant. Taylor did not
fingerprint any of the plastic bags or the tank lid of the commode where cocaine was discovered. 
According to Ponder, he did not see Appellant with any cocaine. Ponder did not hear an offer to buy
or sell drugs between Appellant and Mosley. In fact, he could not hear the conversation between
Appellant and Mosley. All of this evidence is favorable to Appellant. However, in reviewing the
entire record, both for and against the jury's verdict, we do not find that proof of Appellant's guilt
is so manifestly weak as to undermine faith in the jury's resolution, or that the proof of guilt,
although sufficient if taken alone, is greatly offset by conflicting proof. Accordingly, Appellant's
second issue is overruled.


Conclusion

 Based upon our review of the record, we conclude that the trial court did not err in denying
Appellant's motion to suppress. Further, we hold that the evidence is both legally and factually
sufficient to support the jury's verdict that Appellant was guilty of possession of a controlled
substance, cocaine, in the amount of four grams or more but less than 200 grams. Accordingly, the
judgment of the trial court is affirmed.

 SAM GRIFFITH 

 Justice


Opinion delivered April 14, 2004.

Panel consisted of Worthen, C.J., and Griffith, J.

DeVasto, J., not participating


(DO NOT PUBLISH)
1. Tex. Health & Safety Code Ann. § 481.115(a), (d) (Vernon 2003).
2. A "blunt" is a cigar which has been hollowed out, and the tobacco is replaced by marijuana.
3. An offense under section 481.115(d) is a second-degree felony. Tex. Health & Safety Code Ann. 
§ 481.115(d). Appellant pleaded true to the enhancement allegation that he had a prior felony conviction for
possession of a controlled substance. Because the enhancement allegation was found to be true, Appellant was
punished for a first-degree felony. Tex. Pen. Code Ann. § 12.42(b) (Vernon 2003). Punishment of a first-degree
felony is imprisonment for life or for any term of not more than ninety-nine years or less than five years and, in
addition, a fine not to exceed $10,000. Tex. Pen. Code Ann. § 12.32 (Vernon 2003).
4. Appellant cites Kleasen v. State, 560 S.W.2d 938 (Tex. Crim. App. 1977), for the proposition that an
accused may show the required standing to contest a search by showing: (1) that he was lawfully on the premises at
the time of the search; (2) that his possession of the seized objects is itself an essential element of the charged
offense; and (3) that he had a proprietary or possessory interest in the premises searched or the items seized. Id. at
941. The Kleasen court cited Jones v. United States, 362 U.S. 257, 80 S. Ct. 725, 4 L. Ed. 2d 697 (1960), as the
basis for this proposition. Kleasen, 560 S.W.2d at 941. However, Jones has been overruled. United States v.
Salvucci, 448 U.S. 83, 85, 92-93, 100 S. Ct. 2547, 2549, 2553, 65 L. Ed. 2d 619 (1980) (overruling the automatic
standing rule of Jones, concluding that it is too broad and that the inquiry should be whether a defendant had an
expectation of privacy in the area searched); Rakas, 439 U.S. at 142, 99 S. Ct. at 429 (rejecting the phrase
"legitimately on premises" as creating too broad a gauge for measuring Fourth Amendment rights). Therefore,
Kleasen is no longer applicable.